Phyllis **WOODALL**, et al., Plaintiffs–Appellants,

v.

The **CITY OF EL PASO**, et al., Defendants–Appellees.

No. 90–8269.

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1992.

Charles Louis Roberts, El Paso, Tex., Jack R. Burns, Bellevue, Wash., for Jedjo, et al.

Michael R. Gibson, El Paso, Tex., for Woodall.

Richard Lovelace, El Paso, Tex., for Iwabichi, et al.

Eduardo Miranda, City Atty's. Office, Carlos Rincon, Asst. City Atty., El Paso, Tex., for City of El Paso.

Before CLARK, Chief Judge, REAVLEY and JONES, Circuit Judges.

REAVLEY, Circuit Judge:

Appellants contend that the City of El Paso unconstitutionally abridged their speech rights under the Texas and United States constitutions by enacting excessive-

ly restrictive zoning ordinances. The district court dismissed their case in accordance with a jury's verdict that El Paso's ordinances do not effectively deny them a reasonable opportunity to open and operate their adult businesses. Because we fault the district court's instructions to the jury, we reverse the court's judgment and remand this case for further proceedings.

## I. BACKGROUND

Appellants operate bars, bookstores, and movie theaters in El Paso which convey sexually-oriented, though non-obscene, expression to patrons (adult businesses). El Paso's city council enacted a series of zoning ordinances (the Ordinances) by March 1988 which prohibit these businesses from locating within 1,000 feet of churches, schools, residences, nurseries, parks, and each other. *See* El Paso, Tex., Ordinances 6169 (1978), 8926 (1987), 9326 (1988); El Paso, Tex., Code art. II § 20.08.080.A (March 1989). El Paso police began ticketing adult businesses, which were all required to relocate under the Ordinances, in April 1988. Appellants responded with this suit in which they claim that the Ordinances unconstitutionally confine their freedom of expression. They seek an injunction against the Ordinances' enforcement and damages.

Appellants' challenge to the Ordinances mirrors those of other adult business owners in other cities. *See, e.g., City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 41–46, 106 S.Ct. 925, 926–28, 89 L.Ed.2d 29 (1986); *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1276–77 (5th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). Because these cases have decided the threshold issues in adult business zoning litigation, the parties stipulated that the Ordinances abridge protected speech, but do so to serve the substantial governmental interest of curbing the crime and urban blight associated with adult businesses. The only issue that the parties present in this case is whether the Ordinances allow appellants reasonable alternative avenues of communication.

At trial, the parties presented evidence of their respective positions on the number of adult business sites and amount of acreage that comply with the Ordinances. Patricia Garcia, El Paso's Planning Coordinator, testified that the Ordinances permit 78 adult business sites on 1,433, or 0.91%, of El Paso's 158,000 acres. Appellants then offered expert testimony to show that it is impossible for them to relocate on most of these 1,433 acres.

The only instruction that the district court gave to guide the jury in deciding what alternative land was reasonably available to the adult businesses closed by the Ordinance stated:

> [f]or the purpose of determining whether acreage or sites are "reasonably available," you are instructed that adult entertainment businesses must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees. Acreage and sites are not "unavailable" solely because they are already occupied by existing businesses, or because "practically none" of the undeveloped land is currently for sale or lease, or because in general there are no "commercially viable" adult entertainment sites within the area which complies with the ordinance. Although the First Amendment guards against the enactment of zoning ordinances which have "the effect of suppressing, or greatly restricting access to lawful speech," the First Amendment does not compel the City of El Paso to insure adult entertainment businesses, or any other kind of speech related businesses, will be able to obtain sites at bargain prices.

The jury found that 39 adult businesses operated in El Paso on March 22, 1988, the Ordinances allow for 59 adult business sites on 1,165 acres, and the Ordinances do not deny appellants "a reasonable opportunity to open and operate their adult entertainment businesses." The district court upheld the Ordinances' constitutionality pursuant to the jury's verdict.

## II. DISCUSSION

Appellants claim, *inter alia,* that the portion of the court's jury charge previous-

ly quoted misled the jury about the proper law to apply in answering the court's special interrogatories. They asked the court to instruct the jury not to consider land to be available as an alternative avenue of communication for speech affected by the Ordinances if it would be unreasonable to expect adult businesses to relocate on the land from a physical, legal, or economic standpoint. Instead, the court gave the instruction previously quoted.

El Paso contends that the instruction was not improper, arguing that the instruction was taken verbatim from the Supreme Court's holding in *Renton*. El Paso also urges that the instructions were sufficient considering the entire charge and that counsel were allowed to argue unreasonableness to the jury.

A. UNAVAILABLE LAND UNDER *RENTON*

"[T]he First Amendment requires only that [El Paso] refrain from *effectively* denying [appellants] a reasonable opportunity to open and operate [adult businesses] within the city...." *Renton*, 475 U.S. at 54, 106 S.Ct. at 932 (emphasis added). Appellants argue that any land that is "completely unsuited" for use as an adult business is as effectively denied to them by the Ordinances, citing *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1214 (5th Cir. 1982). Based on this authority, appellants conclude that none of the following places offer them a reasonable opportunity to open and operate their adult businesses: 1) industrial warehouse areas; 2) drainage areas on which El Paso would permit no business to build; 3) areas where topography makes it impossible or impractical to build; 4) land subject to restrictive covenants that exclude adult businesses;[1] 5) airport land owned by El Paso that, as a political and practical matter, El Paso would never lease to appellants; and 6) wholly undeveloped desert.

The *Basiardanes* court followed *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 78, 96 S.Ct. 2440, 2456, 49 L.Ed.2d 310 (1976), in considering the *effect* that Galveston's adult business zoning laws had on access to speech protected by the First Amendment. *Basiardanes*, 682 F.2d at 1214; *see also Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 71, 101 S.Ct. 2176, 2184, 68 L.Ed.2d 671 (1981) (distinguishing an ordinance banning nude dancing from the ordinance at issue in *Young* because the *Young* ordinance "did not affect the number of adult movie theaters that could operate in the city ..."). Holding that Galveston's zoning ordinance "drastically impairs the availability" of protected speech and cannot withstand constitutional scrutiny as a time, place, and manner restriction, the *Basiardanes* court explained

> In the ten percent to fifteen percent of the city [from which they are] not categorically banned, adult theaters may operate only in the industrial zones at a great distance from other consumer-oriented establishments. Few access roads lead to the permitted locations, which are found among warehouses, shipyards, undeveloped areas, and swamps. These locations are poorly lit, barren of structures suitable for showing films, and perhaps unsafe. In theory they are available to adult movie proprietors and patrons, but in fact they are completely unsuited to this use.

*Basiardanes*, 682 F.2d at 1214; *accord Purple Onion, Inc. v. Jackson*, 511 F.Supp. 1207, 1216–17 (N.D.Ga.1981) (without considering land price or whether land was for sale, only approximately ten of 81 sites argued to be available under Atlanta zoning ordinance are constitutionally available; other 71 sites are physically, legally, or practically unavailable). Similarly, at least some of the sites that appellants here sought to exclude from consideration as reasonable alternative avenues of communication are likely completely unsuited for appellants' purposes.

---

**1.** In his concurrence to *Reitman v. Mulkey*, 387 U.S. 369, 385, 87 S.Ct. 1627, 1636, 18 L.Ed.2d 830 (1967), Justice Douglas stated that "restrictive covenants 'constitute[ ] a restraint on alienation of property, sometimes in perpetuity, which, if valid, [i]s in reality the equivalent of and ha[s] the effect of state and municipal zoning laws....'" (quoting *Bell v. Maryland*, 378 U.S. 226, 329, 84 S.Ct. 1814, 1870, 12 L.Ed.2d 822 (1964) (Black, J., dissenting)).

El Paso relies on *Renton*. Discussing reasonable alternatives left by Renton's zoning ordinance, the Court stated:

The District Court found, and the Court of Appeals did not dispute the finding, that the 520 acres of land consists of "[a]mple, accessible real estate," including "acreage in all stages of development from raw land to developed, industrial, warehouse, office, and shopping space that is criss-crossed by freeways, highways, and roads." App. to Juris. Statement 28a.

[The adult business owners] argue, however, that some of the land in question is already occupied by existing businesses, that "practically none" of the undeveloped land is currently for sale or lease, and that in general there are no "commercially viable" adult theater sites within the 520 acres left open by the Renton ordinance. Brief for Appellees 34–37. The Court of Appeals accepted these arguments, concluded that the 520 acres was not truly "available" land, and therefore held that the Renton ordinance "would result in a substantial restriction" on speech. [*Playtime Theaters, Inc. v. City of Renton* ] 748 F.2d [527] at 534 [9th Cir.1984].

We disagree with both the reasoning and the conclusion of the Court of Appeals. That [the adult business owners] must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation. And although we have cautioned against the enactment of zoning regulations that have "the effect of suppressing, or greatly restricting access to, lawful speech," *American Mini Theatres*, 427 U.S. at 71, n. 35, 96 S.Ct. at 2453, n. 35 (plurality opinion), we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices. See *id.* at 78, 96 S.Ct. at 2456 (POWELL, J., concurring) ("The inquiry for First Amendment purposes is not concerned with economic impact."). In

our view, the First Amendment requires only that Renton refrain from effectively denying [the adult business owners] a reasonable opportunity to open and operate an adult theater within the city, and the ordinance before us easily meets this requirement.

*Renton*, 475 U.S. at 53–54, 106 S.Ct. at 932 (footnote omitted). We recite further facts concerning Renton's ordinance to fully explore the significance of the Court's passage. The Ninth Circuit concluded that "a substantial part" of the 520 acres open to adult movie theaters under Renton's zoning ordinance was unavailable for First Amendment purposes because that *part* was occupied by a sewage treatment facility, a horse racing facility, an industrial building park, warehouse and manufacturing facilities, an oil tank farm, and a fully-developed shopping center. *Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527, 534 (9th Cir.1984), *rev'd*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The Court did not mention, let alone individually review, any of the uses found by the Ninth Circuit to be unavailable. It simply "disagree[d] with both the reasoning and the conclusion of the Court of Appeals." *Renton*, 475 U.S. at 54, 106 S.Ct. at 932.

We will not read the Court's *Renton* decision to deem sewage treatment facilities as reasonable alternative avenues of communication for protected speech, especially when there is a much more plausible understanding of the Court's disagreement with the Ninth Circuit's reasoning. Renton's city council enacted its zoning ordinance before *any* adult businesses moved into the city. *Renton*, 475 U.S. at 44, 106 S.Ct. at 927. Playtime Theatres was apparently the first adult movie theater operator attempting to locate in Renton and it wanted to open only two theaters. Because there was not a great demand for adult business space in Renton, it did not have to provide a great number of alternate adult business locations in its zoning laws to meet the First Amendment's requirement of allowing "reasonable alternative avenues of communication," *id.* at 50, 106

S.Ct. at 930,[2] and not have " 'the effect of suppressing, or greatly restricting access to, lawful speech.' " *Id.* at 54, 106 S.Ct. at 932 (quoting *Young,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35); *Walnut Properties, Inc. v. City of Whittier,* 861 F.2d 1102, 1110 (9th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989). In *all* of the 520 acres zoned for adult movie theaters, Renton argued that there were over 400 potential adult movie theater sites. Brief for Appellants, *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), (No. 84–1360) (LEXIS, Genfed library, Briefs file). Thus, even without the "substantial part of the 520 acres" that the Ninth Circuit found to have been constitutionally unavailable, the Court obviously could have found two available sites.[3] The first and last sentences in the lengthy *Renton* passage previously quoted indicate that the Court recognized evidence of adequate alternative channels of communication for the speech limited by Renton's ordinance and therefore support our interpretation of *Renton.* The Court did not disagree with all of the Ninth Circuit's constitutional availability determinations. Rather, it disagreed with the Ninth Circuit's reasoning because the Ninth Circuit found that Renton's zoning ordinance allowed insufficient alternative avenues of communication exclusively based on the court's determination that much land was effectively unavailable to Playtime Theatres. *Renton* reaffirms *Young's* teaching that the only correct inquiry is whether the land that *is*

constitutionally available is also sufficient to avoid suppressing access to protected speech. *See Renton,* 475 U.S. at 54, 106 S.Ct. at 932 (quoting *Young,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35).

 This court has cited *Basiardanes'* communication avenue suitability holding with approval even after *Renton. FW/PBS, Inc. v. City of Dallas,* 837 F.2d 1298, 1303 (5th Cir.1988), *aff'd in part and rev'd in part on other grounds,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *see also SDJ,* 837 F.2d at 1275, 1278 (citing *Basiardanes* with approval for propositions other than its communication avenue suitability holding).[4] *Renton* expressly recognizes that El Paso cannot zone in a manner that effectively denies appellants "a reasonable opportunity to open and operate an adult theater within the city." *Renton,* 475 U.S. at 54, 106 S.Ct. at 932. When *Renton* stated that the theater owners "must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees." *id.,* the Court obviously contemplated that there was a "market" in which businesses could purchase or lease real property on which business could be conducted. A real estate market that provides no opportunity to compete cannot provide a reasonable opportunity to do so. As Justice Powell's concurrence in *Young* made clear, the court's inquiry in this type of case looks to the "effect of the ordinance upon freedom of expression." 427 U.S. at 78, 96 S.Ct. at 2456. Land can be completely unsuitable for conducting an adult business if its

---

2. The Court cites *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 649, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981) as authority for its test for the reasonableness of Renton's time, place, and manner restriction on speech. *Renton,* 475 U.S. at 50, 106 S.Ct. at 930. In *Heffron,* though, the Court worded the second prong of the time, place, and manner test differently than it did in *Renton.* In *Heffron,* the Court stated that content-neutral time, place, and manner restrictions on protected speech must "leave open *ample* alternative channels for communication." 452 U.S. at 648, 101 S.Ct. at 2564 (emphasis added, citing cases).

3. It is also possible that the Court disagreed with only some of the Ninth Circuit's characterizations of unavailable land, such as the "fully-

developed shopping center." *Renton,* 748 F.2d at 534. There is nothing to indicate that the owners of the shopping center were barred by restrictive covenants from leasing to adult movie theaters, so, depending on the shopping center's size, it alone could have provided a reasonable alternative avenue of communication for Playtime Theatres.

4. The *SDJ* court never had occasion to address *Basiardanes'* communication avenue suitability holding because, like *Renton,* the zoning ordinance at issue in *SDJ* provided so many alternate sites that Houston's adult businesses could not legitimately argue that they were denied reasonable alternative avenues of communication.

physical, legal, or economic character prohibits its use by any such business.[5] Cities that allocate only completely unsuitable land for adult business use do exactly what the Court proscribed in *Renton* and *Young: effectively* suppress protected speech.

### B. JURY CHARGE SUFFICIENCY

■ A district judge must " 'instruct the jurors, fully and correctly, on the applicable law of the case, and ... guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth.' " *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 424–25 (5th Cir.1985) (quoting 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2556 at 654 (1971)). Although we afford judges "wide latitude in fashioning jury instructions," we will reverse and remand " '[i]f the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.' " *Id.* at 425 (quoting *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979)).

The trial court gave this jury insufficient guidance in resolving the crucial issue of what land they could consider as available for First Amendment purposes when it instructed that:

> [a]creage and sites are not "unavailable" solely because they are already occupied by existing businesses, or because "practically none" of the undeveloped land is currently for sale or lease, or because in general there are no "commercially viable" adult entertainment sites within the area which complies with the ordinance.

Like El Paso's attorneys and the staff of Harvard's Law Review, *see The Supreme Court—Leading Cases*, 100 HARV.L.REV. 100, 197 (1986), the jury could easily take this *Renton* paraphrase to mean that all land made available to appellants by the Ordinances is to be considered a reasonable alternative avenue of communication for constitutional purposes. While we recognize that the jury did not find constitutionally available all of the land that El Paso *argued* to have been open to adult businesses under the Ordinances, the jury

---

**5.** The standard for determining when land is economically unsuitable as an alternative avenue of communication remains obscure. We need not attempt to pierce this obscurity to decide this appeal. Appellants' proof and contentions at trial dealt exclusively with physical and legal unavailability.

However, because the line between legal and physical impracticalities and economic impracticality is thin, the economic issue may well occur on remand.

There is a reasonable, efficient way to protect sexually-oriented expression from overzealous zoning laws without guaranteeing adult business owners' profits, while remaining true to *Renton* and *Young*. It is practically irrelevant to the First Amendment's alternative avenue availability inquiry whether a particular adult business, with its management, financing, and capital costs, can make a profit and comply with a challenged zoning ordinance. The First Amendment does not guarantee speech-related businesses the right to stay in business, let alone any particular profit margin, solely by virtue of their relationship to speech. *See SDJ*, 837 F.2d at 1276–77 ("alternative sites need not be commercially viable"). The First Amendment only protects speech, so, under Justice Powell's *Young* reasoning, the economic impact of a challenged law on speech-related businesses is only significant to the extent that it suppresses

people's ability to convey and receive protected messages. That a business' operating costs under a challenged ordinance would render it unprofitable does not mean that the ordinance has suppressed people's ability to convey protected messages. Likewise, if a business must charge exorbitant prices to comply with a challenged ordinance, the ordinance does not necessarily interfere with people's ability to receive protected messages. A challenged adult business zoning ordinance only has the effect of suppressing protected speech if the economic burdens that it imposes on all adult businesses has the *net* effect of limiting access to the speech.

In practical terms, this means that economic unsuitability determinations are to be made on a macro scale. Land is only economically unsuitable as a reasonable alternative avenue of communication if no adult business could possibly expect to profit by opening there. *Accord Alexander v. City of Minneapolis*, 928 F.2d 278, 283–84 (8th Cir.1991) (district court erred in striking down adult business zoning ordinance based on irrelevant evidence that ordinance's challenger could not find an economically suitable relocation site when other adult business owners found suitable relocation sites). This understanding of economic unsuitability dovetails with our statements regarding physical and legal unsuitability in that almost all forms of physical and legal unsuitability may be couched in terms of economic unsuitability.

found that approximately 565 acres of desert that does not have roads, utilities, and structures qualifies as a reasonable alternative avenue of communication for adult businesses.[6] Given their findings and the court's charge, the jury either guessed as to constitutionally available acreage or equated constitutional availability with availability under the Ordinances, after rejecting some of El Paso's evidence as to the amount of land the Ordinances left open.

El Paso's argument that the instructions were sufficient in light of the whole charge given overlooks the fact that the portion quoted above was the *only* instruction given on reasonable availability. The city's contention that argument of counsel could supplement the charge is contrary to the court's specific instruction that the statements, objections, and arguments of counsel served only to call attention to facts and inferences that might otherwise escape notice and were not to be considered as evidence in the case.

Appellants contend that it would be unreasonable to limit relocation of adult businesses to property where it is physically or legally impossible for them to conduct business. Appellants argue that land may not be considered reasonably available for First Amendment purposes where the land: has nothing on it; has topographical or physical impediments to building; lacks street access; entails an extraordinarily high cost of building; lacks available utilities; is landlocked; is an area of concrete retaining walls; is a United States Customs holding area; is a cotton field and has sharecropper houses; contains large industrial warehouses; consists of sand dunes, cliffs, gullies and ponding areas, including the Jesuit Drain basin, Peter Cooper ponding area and Pullman Drain; or, is desert land. These alleged faults which appellants say make these alternative locations unreasonable depend on the land's physical qualities or characteristics.

Appellants also argue that land may not be considered available for First Amendment purposes where the land: could not receive a city building permit because it is a ponding area; is airport property where the city would never approve a lease to an adult business; is the portion of a shopping mall area required by law to be dedicated to parking; is subject to restrictive covenants that prohibit its use for an adult business; or, is subjected to deed restrictions or special contracts which proscribe adult businesses or retail use. Each of these alleged faults depends on the land's legal characteristics.

Appellants also assert that economic or business considerations affect the availability of some land as reasonable alternatives. In this case the alleged "economic" impracticability of the land is really a consequence of the land's physical or legal characteristics. Appellants do not contend that any of the available property now owned or used by other types of businesses is so expensive to purchase or lease that no adult business could economically afford it. Such a contention would have presented a more difficult issue but one which was not raised by the proof in this record. *See* n. 5 *supra.*

■ Appellants also complain that some property is currently in use. *Renton* responds, in part, to this contention. The fact that a business is operated on a particular parcel of property does not necessarily take the property out of the marketplace where adult businesses must fend for themselves. If, however, a business is operated pursuant to a lease that commits the property to the present tenant for its business purposes for a term of years, the property may be effectively unavailable to adult businesses or any other business enterprise. Such a leasehold could legally bar appellants' use in the same manner as restrictive covenants or zoning prohibitions.

■ As to those aspects of physical or legal unavailability that were put in issue

---

6. In response to a special interrogatory, the jury stated that 1165 acres comply with the Ordinances and are reasonably available to adult entertainment businesses on which to open and operate. Garcia testified that only six hundred of the acres open to adult businesses under the Ordinances have streets, utilities, and buildings.

by the evidence and required some fact determination, the court should have told the jury that land cannot be found to be reasonably available if its physical or legal characteristics made it impossible for any adult business to locate there. We do not fault the court's use of special interrogatories requiring the jury to find the number of adult businesses in operation in El Paso on March 22, 1988; the number of sites and amount of acreage left available by the Ordinances; and whether appellants were denied a reasonable opportunity to open and operate their businesses. We do hold that the instruction language the court recast from a part of the *Renton* opinion did not respond to issues raised, nor did it adequately guide the jury in resolving the facts presented by today's case.

### C. PARTIES' STIPULATION REGARDING FACIAL CONSTITUTIONALITY

Pursuant to the parties' stipulation that "[t]he ordinance in question is constitutional on its face," the court instructed the jury that "the parties agree that the adult business ordinance in question is constitutional on its face; that is, the adult business ordinance ... does not unreasonably limit alternate avenues of communication."

The record confirms that there was substantial confusion regarding exactly what appellants meant by their stipulation to the Ordinances' facial constitutionality. Apparently, in light of *Renton, SDJ,* and *FW/ PBS'* appellants conceded that the Ordinances are content-neutral and serve a substantial governmental interest. They never specifically conceded the facial reasonableness of the Ordinances' limitation on alternative avenues of communication. Instead, appellants repeatedly asserted that their only objection to the Ordinances is the severity of the Ordinances' limitations on their activities, not the fact that the Ordinances limit their activities. The stipulation appears to concede too much, but that did not mislead El Paso about the crux of this lawsuit.

We think that the court's instruction on facial constitutionality prejudiced appellants because it did not help the jurors decide whether the Ordinances deprive appellants of their First Amendment rights and it had tremendous potential to lead jurors to think that appellants agreed that the Ordinances provide constitutionally adequate alternative avenues of communication. We caution the district court against reusing its instruction on facial constitutionality. The court must also reconsider appellants' claim under the Texas Constitution in light of our holding that appellants contended throughout this lawsuit that the Ordinances do not provide them reasonable alternative avenues of communication.

REVERSED and REMANDED.