United States Court of Appeals,

Fifth Circuit.

Nos. 93-8674, 93-8739.

Phyllis WOODALL, et al., Plaintiffs,

Phyllis Woodall, et al., Plaintiffs-Appellees,

v.

The CITY OF EL PASO, et al., Defendants,

The City of El Paso, Defendant-Appellant.

Phyllis WOODALL, et al., Plaintiffs,

Phyllis Woodall, Jeannie Coutta d/b/a the Naked Harem, Jedjo, Inc., SMD Enterprises, Inc., d/b/a The Lamplighter d/b/a Red Flame and Marc Diedrich, President, Plaintiffs-Appellants,

v.

The CITY OF EL PASO, et al., Defendants-Appellees.

April 14, 1995.

Appeals from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, SMITH and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

At issue in this case is the constitutionality of the City of El Paso's (the City) zoning ordinances (the Ordinances) regulating sexually-oriented or adult businesses. Shortly after the City began enforcing the Ordinances, various adult businesses and adult business owners (the Adult Businesses) filed suit seeking damages and injunctive relief. After this case was tried, appealed, reversed, remanded, and retried, the jury returned a verdict in favor of the Adult Businesses. The district court entered a judgment awarding damages to the Adult Businesses and enjoining

enforcement of the Ordinances against the Adult Businesses. The City appeals, contending that the jury could not have reached the verdict it did under the correct legal standard. The Adult Businesses cross-appeal, contending that the district court erred in applying only federal constitutional standards rather than the greater protections the Adult Businesses claim they enjoy under the Texas Constitution. We decide two issues on appeal: whether the City was entitled to judgment as a matter of law due to the lack of evidence that the Adult Businesses were denied reasonable alternative avenues of communication, and whether Article 1 Section 8 of the Texas Constitution provides greater protection under the circumstances of this case than that provided by the First Amendment to the United States Constitution. After a thorough review of the record, we conclude that the jury could only have reached its verdict based on an incorrect view of the law, and that there is no constitutional infirmity with the City's zoning ordinances. We also hold that the Adult Businesses are entitled to the same protection under the Texas Constitution as under the United States Constitution.

## I.

In the 1970s the City of El Paso began passing a series of zoning ordinances regulating sexually-oriented or adult businesses such as adult bookstores, adult movies, topless bars and live nude entertainment establishments. By March, 1988, the Ordinances prohibited these businesses from locating within 1000 feet of churches, schools, residences, nurseries, parks, and each other.

2

*See* El Paso, Tex.Ordinances 6169 (1978), 8926 (1987), 9326 (1988); El Paso, Tex., Code art. II § 20.08.080.A (March 1989).

In April, 1988, El Paso police began ticketing adult businesses which failed to comply with the Ordinances. The Adult Businesses filed suit in state court for damages under 42 U.S.C. § 1983 and for injunctive relief, alleging that the Ordinances violated the First and Fourteenth Amendments of the United States Constitution and Article 1 Section 8 of the Texas Constitution. The City removed the cause to federal court alleging jurisdiction under 28 U.S.C. §§ 1331 and 1343.

Erotic non-obscene printed matter, films, and live entertainment are sheltered by the First Amendment, but enjoy less protection than some other forms of speech, such as political speech. *TK's Video, Inc. v. Denton County, Texas,* 24 F.3d 705, 707 (5th Cir.1994). Although the Constitution looks askance at attempts to regulate such "speech" based solely on its content, we distinguish between regulating the content and regulating the consequence of protected activity. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46-48, 106 S.Ct. 925, 928-29, 89 L.Ed.2d 29 (1986). A content-neutral time, place, or manner restriction must (1) be justified without reference to the content of the regulated speech; (2) be narrowly tailored to serve a significant or substantial governmental interest; and (3) preserve ample alternative means of communication. *Id.*

The Adult Businesses stipulated in the first trial that the Ordinances contained facially valid time, place and manner

3

restrictions, so the only issues presented to the first jury were whether the Ordinances afforded the Adult Businesses reasonable alternative avenues of communication and if not, what damages should be awarded. The jury returned a verdict in favor of the City, finding that 39 adult businesses operated in El Paso on March 22, 1988, that the Ordinances allowed for 59 adult business sites on 1,165 acres, and that the Ordinances had not denied the Adult Businesses "a reasonable opportunity to open and operate their adult entertainment businesses." After the trial the district court dismissed the Adult Businesses' claims under the Texas Constitution.

On appeal, the Adult Businesses argued that the jury had been misled about the proper law to apply in answering the district court's special interrogatories. We reversed and remanded for a new trial, holding that the district court should have instructed the jury that land cannot be found to be reasonably available if its physical or legal characteristics made it impossible for any adult business to locate there. *Woodall v. City of El Paso,* 950 F.2d 255 (5th Cir.1992) (*Woodall I* ). We also ordered that the district court reconsider the Adult Businesses' claim under the Texas Constitution. The opinion in *Woodall I* contained a lengthy discussion on the meaning of available land under *Renton,* which suggested that an alternative site is not reasonably available unless it is economically suited to the needs of adult businesses. *See id.* at 260-61.

On rehearing, we reiterated our prior holding that land with

4

physical characteristics which render it unavailable for any kind of development, or legal characteristics which exclude adult businesses, may not be considered "available" for constitutional purposes under *Renton.* *Woodall v. City of El Paso,* 959 F.2d 1305 (5th Cir.1992) (*Woodall II* ). We withdrew our prior discussion regarding economic unavailability and stated that we did not endorse the Adult Businesses' theory that land is not available for use by adult businesses if it would be "unreasonable" to expect adult businesses to relocate there.

Shortly before the second trial, the Adult Businesses filed a motion to reinstate their claims under the Texas Constitution. The district court determined that their rights under the Texas Constitution mirrored those under the United States Constitution and denied the motion. On retrial, the parties again stipulated that the Ordinances were content neutral time, place and manner restrictions and that they served a substantial government interest. The parties also stipulated to the amount of damages to be awarded in the event of an outcome favorable to the Adult Businesses. At the close of the Adult Businesses' evidence, the City moved for directed verdict. The motion was denied and the matter was submitted to the jury. The jury was asked to determine the number of adult businesses in operation in 1988 and 1992, the number of sites and total acreage available in both of those years, and whether the Adult Businesses were denied a reasonable opportunity to open and operate their businesses. For 1988, the jury found that there were 39 adult businesses in operation, 12

5

sites available, 12 acres available, and that the Adult Businesses were denied a reasonable opportunity to open and operate their businesses. For 1992, the jury found that there were 22 adult businesses in operation, 12 sites available, 12 acres available, and that the Adult Businesses were denied a reasonable opportunity to open and operate their businesses. The City timely filed a motion for judgment as a matter of law and for new trial.

The City appealed, contending that the Adult Businesses staked their entire case on principles espoused in *Woodall I,* withdrawn in *Woodall II,* and expressly repudiated in *Lakeland Lounge of Jackson, Inc. v. City of Jackson, Mississippi,* 973 F.2d 1255, 1260 (5th Cir.1992), and that the jury rendered its verdict based on those wrong principles. The Adult Businesses filed a cross appeal, renewing their argument that the Texas Constitution provides them broader protections than the United States Constitution, and alleging that the district court erred in denying their motion to reinstate their claims brought under the Texas Constitution.

## II.

### A.

The City and the Adult Businesses tried this case under different views of the applicable legal standard. The City approached this case under the theory that a site is available unless it is physically or legally unavailable as we stated in *Woodall II.* The Adult Businesses apparently took their cue from the portion of this Court's opinion in *Woodall I* that was withdrawn in *Woodall II* as "unnecessary" to the Court's decision. The Adult

6

Businesses' position at trial and on appeal has been that a site is only available if it would be commercially reasonable for an adult business, or, more equivocally, for some hypothetical "generic" retail business that has all the requirements of a topless bar, to locate there. In any event, the Adult Businesses' evidence overwhelmingly concerned whether a topless bar could expect to make a reasonable profit at a particular site.

It is plain after a thorough review of the record that the jury decided this case based on a misapprehension of the questions presented to it. The Adult Businesses' entire case was founded on the premise that it would not be commercially reasonable for an adult business, or more particularly a topless bar, to locate on the alternative sites proposed by the City. This was the theory of the case that the Adult Businesses presented to the jury in their opening statements, it is what the Adult Businesses argued to the jury, and to a lesser extent it is what the Adult Businesses argued on appeal. The Adult Businesses presented extensive evidence upon which a jury could have found that none of the sites suggested by the City were commercially desirable locations for adult businesses, but scant evidence that the proposed sites were physically or legally unavailable, and virtually no relevant evidence at all about numerous alternative sites not specifically designated by the City. The jury's verdict is clearly against the great weight of the evidence. The Court must now determine whether the record is so devoid of evidence upon which the jury could have reached its verdict that the City was entitled to a judgment as a

7

matter of law.

In determining whether the district court should have granted the City's motions for judgment as a matter of law, this Court must review the decision of the district court by examining all of the evidence before the jury and the reasonable inferences drawn from such evidence. The aim of the Court on review is to determine whether a rational jury could reach the conclusion that the jury actually reached. *Fields v. J.C. Penney Co.,* 968 F.2d 533, 536 (5th Cir.1992). If the facts and reasonable inferences therefrom point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict, viewing the facts in the light most favorable to the party against whom the motion is made, and giving that party the advantage of fair and reasonable inferences which the evidence justifies, then a motion for judgment as a matter of law should be granted. *Hamilton v. Grocers Supply Co., Inc.,* 986 F.2d 97 (5th Cir.1993).

B.

The inquiry into whether the record contains evidence to support the jury's determinations begins with the meaning of the questions the jury was asked to answer. The jury was asked to determine how many alternative sites were reasonably available to the Adult Businesses under the Ordinances, and whether the Ordinances left reasonable alternative avenues of communication. In *Renton,* the Supreme Court set out two principles that infuse successive cases dealing with zoning ordinances restricting permissible locations of adult businesses: (1) the ordinances must

8

allow for reasonable alternative avenues of communication and (2) commercial viability is not a factor.  475 U.S. at 54, 106 S.Ct. at 932.   In *Woodall II,* we interpreted *Renton* as standing for the proposition that "land with physical characteristics that render it unavailable for any kind of development, or legal characteristics that exclude adult businesses, may not be considered "available' for constitutional purposes under *Renton*."  959 F.2d at 1306.

Physical availability may be thought of in terms of the cost of altering or developing the area to change its physical characteristics to make it suitable for some generic commercial enterprise.  The relevant consideration is whether the physical characteristics of the site present an unreasonable obstacle to opening a business;  an obstacle that can be overcome without incurring unreasonable expense does not make a site unavailable, but an obstacle that cannot reasonably be overcome renders the site unavailable.  Thus, in determining whether there are sufficient sites available, the finder of fact may exclude land under the ocean, airstrips of international airports, sports stadiums, areas not readily accessible to the public, areas developed in a manner unsuitable for any generic commercial business, areas lacking in proper infrastructure, and so on. *See Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1532 (9th Cir.1993).  However, the fact that a site may not be commercially desirable does not render it unavailable.  It is not relevant that a relocation site will result in lost profits, higher overhead costs, or even prove commercially unfeasible for an adult business. *Id.* at 1531.  There

9

is no requirement that an adult business be able to obtain existing commercial sites at low cost and with market access to ensure its prosperity. *Grand Brittain, Inc. v. City of Amarillo, Texas*, 27 F.3d 1068, 1069 (5th Cir.1994). As we have stated time and again, commercial viability is not a relevant consideration. *See id.; Lakeland Lounge*, 973 F.2d at 1260; *SDJ, Inc. v. City of Houston*, 837 F.2d 1268 (5th Cir.1988).

## C.

The jury found that there were 39 adult businesses in operation in 1988 but only 12 sites available and only 12 acres available, and the jury determined that the Adult Businesses had been denied an opportunity to open and operate their businesses. The City contends that none of the jury's findings for 1988 is supported by the evidence. The jury also found that there were 22 adult businesses in operation in 1992 but only 12 sites reasonably available and only 12 acres available, and determined that the Adult Businesses had been denied a reasonable opportunity to open and operate their businesses. The jury's finding that 22 adult businesses were in operation is unchallenged, but the City contends that the jury's other findings relative to 1992 are unsupported.

Where a zoning ordinance requires that adult businesses maintain a certain distance from one another, merely knowing the number of acres available is not particularly enlightening. Assuming a 1000 foot separation requirement and that each business requires one acre, 100 available acres could support as few as two or as many as 100 locations depending on how the acreage is

10

situated within the city and how the available acreage is utilized. We are therefore not particularly concerned with determining how much acreage was actually available. It is enough to note that the jury's findings on available acreage were clearly based on a misapprehension of the meaning of available land and that the findings find no support in the record. What is important is the number of adult business locations that the acreage will support given the spacing requirements. That is what determines whether there are sufficient alternative sites available, and that is our focus in reviewing the sufficiency of the evidence.

D.

The City identified 50 specific sites meeting the Ordinances' spacing requirements which it contended were physically and legally available in 1988. The sites were located on 1433 acres of land complying with the Ordinances, though the City did not contend that all 1433 acres were physically and legally available. In addition to the 50 sites identified as available in 1988, the City identified 16 additional sites that had become available due to rezoning that it contended were physically and legally available in 1992 located on 1690 acres of land meeting the zoning requirements.[1] The uncontroverted evidence is that all of the sites specifically identified by the City had road access in 1992,

---

[1] Patricia Aduato (known as Patricia Garcia in *Woodall I* ), El Paso's Planning Coordinator, stated that the City had identified 64 sites that were available in 1992, but this is clearly a misstatement. Aduato gave testimony about each of the 66 specific sites that the City contended were available and both the City and the Appellees entered into evidence photographs of all 66 sites.

that utilities were put in at the time that the roads were constructed, and that all sites either had existing structures or had no physical impediments to building.[2] The evidence for 1988 was substantially the same, except that there was some evidence that three sites may not have had road access in 1988.[3]

The Adult Businesses advanced a number of reasons why they considered various sites unavailable. Some are patently irrelevant. The Adult Businesses claimed that some sites were unavailable because the owner of the site probably would not rent or sell to an adult business, or because the building was currently occupied or leased,[4] neither of which is of any obvious concern

_____

[2]Phyllis Woodall testified that many areas identified by the City were undeveloped desert with no road access. She testified that some areas did not have roads or the closest roads dead-ended in the middle of nowhere, that some areas were covered with sagebrush and sinkholes, and that some had no utilities; but Woodall never tied her testimony to any of the specific sites identified by the City as available. Indeed she could not, because both the Adult Businesses and the City entered into evidence photographs of the specific sites identified by the City which indisputably show that the sites have road access and that those sites without existing structures have no visible impediments to constructing a building.

[3]Patricia Aduato testified that, although all the roads appeared on 1988 zoning maps, she did not know whether the roads on which three of the proposed sites were located had actually been built at that time.

[4]We suggested in *Woodall I* that: "[When a] business is operated pursuant to a lease that commits the property to the present tenant for its business purposes for a term of years, the property may be effectively unavailable to adult businesses or any business enterprise. Such a leasehold could legally bar appellants' use in the same manner as restrictive covenants or zoning prohibitions." 950 F.2d at 262. In *Topanga Press,* the Ninth Circuit expressed some mystification about this suggestion, but declined to pass on its correctness, and stated that "property is not "potentially' available when it is unreasonable to believe that it would ever become available to a commercial

12

under *Renton.* *Renton* 's prohibition against consideration of economic impact forecloses inquiry into whether a relocation site is only "potentially" as opposed to "actually" available. *Topanga Press,* 989 F.2d at 1529. The Adult Businesses' complaints about most sites amounted to nothing more than the fact that some of the sites were on less travelled roads or away from other commercial development, though there was no evidence that any site with road access was actually inaccessible to the general public. The Adult Businesses' only real objection to these sites was that they did not believe the locations could generate sufficient business to support a topless bar, which is to say that the Adult Businesses deemed them to be not commercially viable. *See Lakeland Lounge,* 973 F.2d at 1260; *see also D.G. Restaurant Corporation v. City of Myrtle Beach,* 953 F.2d 140 (4th Cir.1991) (holding that ordinance that restricted adult businesses to a remote area of town away from other businesses and tourist areas did not violate *Renton* ).

The Adult Businesses complained that some sites had existing structures that were unsuitable for any small retail business. In many cases these were large multi-tenant office-warehouse buildings, and the uncontroverted evidence was that retail businesses could and occasionally did locate in such buildings. A few sites were occupied by rather large single use building like a warehouse or factory, which could arguably be outside the

---

enterprise." 989 F.2d at 1531. We need not speculate here about what lease terms would make a property unavailable to any commercial enterprise. The record is devoid of evidence that any site was subject to a long term lease, much less one with such terms as would take it out of the commercial real estate market.

13

commercial real estate market. The Adult Businesses also complained that some sites lacked adequate parking to meet the City's requirements for retail businesses, but made no attempt to show that any site's parking problem could not be cured at a reasonable cost. The Adult Businesses had other similar complaints about other sites. However, even if we agreed that the these sites suffered from defects so severe as to take them out of the commercial real estate market and render them physically unavailable, there was no evidence that surrounding sites suffered from the same impediments so as to render them likewise unavailable.

There is simply no evidence in the record from which a reasonable inference could be drawn that the sites proposed by the City were the only sites potentially available. Rather, the collection of specific sites suggested by the City was but one possible arrangement of adult business locations that could coexist under the spacing requirements of the Ordinances. The zoning maps show that each site suggested by the City was part of a larger area of potentially available sites, and virtually every site could be shifted to some nearby location without significantly upsetting other sites or reducing the total number of sites available. In almost every case, if the suggested site proved physically or legally unavailable, there was another site next door or across the street that was also potentially available.

The Adult Businesses had the burden of proving that the Ordinances denied them a reasonable opportunity to open and operate

14

their businesses by failing to provide reasonable alternative avenues of communication. To meet their burden, the Adult Businesses had to show that the areas left open to them were inadequate to satisfy the demand for adult business locations. Under the circumstances of this case, in order show that the number of adult businesses that could coexist under the Ordinances was smaller than the number of sites suggested by the City, the Adult Businesses had to show not only that a specific site was unavailable, but that its surrounding area was unavailable as well.

The Court can identify few proposed sites where there was even a suggestion that the site suffered from an impediment that might also reasonably be attributed to the surrounding area. Although Phyllis Woodall testified generally that the areas which the City claimed were available under the Ordinances lacked street access, were covered with sinkholes, or were otherwise unsuitable for any sort of development, the photographs of the specific sites entered into evidence by both sides make it clear that the actual sites suggested by the City and their immediate vicinity were not the areas about which Woodall testified. The record suggests only three situations in which the evidence might support an inference that a specific site and its surrounding area were physically or legally unavailable: three sites and their surrounding areas may have been subject to reciprocal easements barring adult businesses, four sites may have been within 1000 feet of prohibited uses, and three sites might not have had road access in 1988. However, even assuming that there was sufficient evidence to support findings

that all the aforementioned areas were actually unavailable, the Ordinances still left a sufficient area physically and legally available for at least forty adult businesses to operate simultaneously in 1988, and for significantly more in 1992. When we compare this with the jury's findings that there were 39 adult businesses in operation in 1988 and only 22 in 1992, we see that, as a matter of arithmetic, there were at all relevant times more "reasonable" sites available than businesses with demands for them. The Ordinances therefore afforded the Adult Businesses adequate alternative means of communication. *See Lakeland Lounge,* 973 F.2d at 1260.

## III.

The Adult Businesses contend that the district court erred in denying their motion to reinstate their claims under Article 1 Section 8 of the Texas Constitution. The Adult Businesses maintain that the standard for determining the validity of El Paso's Ordinances under the Texas Constitution and the United States Constitution are different, and thus they are entitled to pursue a separate claim under Texas Constitution.

Article 1, Section 8 of the Texas Constitution provides in the relevant part:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press....

Similarly, the First Amendment of the United States Constitution provides:

> Congress shall make no law ... abridging the freedom of

16

speech, or the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The Texas Supreme Court has held that free speech rights under the Texas Constitution may be broader than those provided by the Federal Constitution in certain cases. *E.g., Ex Parte Tucci,* 859 S.W.2d 1 (Tex.1993); *Davenport v. Garcia,* 834 S.W.2d 4 (Tex.1992); *O'Quinn v. State Bar of Texas,* 763 S.W.2d 397 (Tex.1988); *Channel 4, KGBT v. Briggs,* 759 S.W.2d 939 (Tex.1988). The Adult Businesses argue that under *Davenport* the free speech clause of the Texas Constitution requires the City to show that the Ordinances protect a "compelling government interest" and are the "least restrictive means" possible to protect this interest, whereas under *Renton* the United States Constitution only requires the City to show that the Ordinances protect a "substantial government interest" and do not "unreasonably limit" alternative avenues of communication.

The district court determined that the greater protections set out in *Davenport* apply only to prior restraints and not to time, place and manner restrictions in land use restrictions of sexually oriented businesses. The district court noted that *Lindsay v. Papageorgiou,* 751 S.W.2d 544 (Tex.App.—Houston [1st Dist.] 1988, writ denied), the only Texas case directly on point, held that the *Renton* standard applies under Texas Constitution as well as under the United States Constitution. The Adult Businesses contend that the *Davenport* standard was extended to land-use cases in *Ex Parte Tucci,* 859 S.W.2d 1, and that *Lindsay* has been impliedly overruled. We are unpersuaded.

17

In *Tucci,* a plurality of Justices held that the *Davenport* standard should have been applied to a temporary restraining order which regulated abortion protest during the 1992 Republican Party Convention in Houston, Texas. The *Tucci* Court addressed the applicability of *Davenport* to restrictions on political protest. It did not address whether the more stringent standard was applicable in land-use cases involving adult businesses. The simple fact of the matter is that there is no direct Texas authority supporting the Adult Businesses' position that the *Davenport* standard should be expanded to land-use cases involving adult businesses, and the only Texas authority directly on point opted for the *Renton* standard. *See Lindsay v. Papageorgiou,* 751 S.W.2d 544 (Tex.App.—Houston [1st Dist.] 1988, writ denied), *see also Maloy v. City of Lewisville,* 848 S.W.2d 380 (Tex.App.—Fort Worth 1993, no writ). If the intermediate Texas courts are wrong about Texas law in this area, we are content to wait until the Texas Supreme Court corrects their error. We hold that the Adult Businesses' claims under the Texas Constitution should be determined under the same standard as used under the United States Constitution.

## IV.

We conclude that the City was entitled to judgment as a matter of law, and that the district court did not err in denying the Adult Businesses' motion to reinstate their claims under the Texas Constitution. We therefore REVERSE and REMAND with instructions to dissolve the injunction entered by the district court prohibiting

18

enforcement of the Ordinances and for entry of judgment in accordance with this opinion.