**CENTERFOLD CLUB, INC., Plaintiff,**

v.

**The CITY OF ST. PETERSBURG, et al., Defendants.**

**Joseph CIVITH d/b/a Foxy Lady, et al., Plaintiffs,**

v.

**CITY COUNCIL OF ST. PETERSBURG, acting in their official capacity, et al., Defendants.**

**3405, INC., a Florida Corporation d/b/a, The Wharehouse, Plaintiff,**

v.

**CITY OF ST. PETERSBURG, a Florida Municipal Corporation, et al., Defendants.**

**Nos. 94–93–CIV–T–24(B), 94–152–CIV–T–24(B), and 94–160–CIV–T–24(B).**

United States District Court, M.D. Florida, Tampa Division.

May 20, 1997.

Nicholas M. Athanason, Athanason & Athanason, St. Petersburg, FL, Mark R. Dolan, Lirot Dolan, P.A., Tampa, FL, for Centerfold Club, Inc.

Luke Charles Lirot, Mark R. Dolan, Lirot Dolan, P.A., Tampa, FL, for Joseph Civith, Dou–Han Inc., Sancharger Inc., John Doe.

Mark R. Dolan, Lirot Dolan, P.A., Tampa, FL, for 3405, Inc.

Daniel J. Santaniello, Luks, Koleos & Santaniello, P.A., Ft. Lauderdale, FL, for Lita Sargent.

Michael S. Davis, City Attorney's Office, City of St. Petersburg, St. Petersburg, FL, Mark Alfred Winn, City of St. Petersburg, St. Petersburg, FL, for City of St. Petersburg, David Fischer, Darrell Stephens.

Michael S. Davis, City Attorney's Office, City of St. Petersburg, St. Petersburg, FL, for City Council for the City of St. Petersburg, FL, Michael Davis, Bernie McCabe.

Mark Alfred Winn, City of St. Petersburg, St. Petersburg, FL, Thomas A. Bustin, Office of City Attorney, St. Petersburg, FL, for Connie Kone, David T. Welch, Paul V. Yingst.

Leonard Selig Englander, Englander & Fischer, PA, St. Petersburg, FL, for Craig Sher.

## ORDER

BUCKLEW, District Judge.

This Cause is before the Court on the following motions:

(a) Defendants Connie Kone, David T. Welch and Paul V. Yingst's (in their individual capacities) (collectively referred to· as the "Council Defendants") Motion for Summary Judgment (Doc. No. 98, filed November 17, 1995);[1]

(b) Council Defendants' Motion for Permission to File Reply Memorandum (Doc. No. 101, filed December 12, 1995);[2]

(c) Plaintiffs' Motion for Summary Judgment (Doc. No. 113, filed May 21, 1996);[3]

(d) Defendant City of St. Petersburg and Defendants Fischer, Stephens and Davis' (in their official capacities) (collectively referred to as the "Defendants") Motion for Summary Judgment (Doc. No. 115, filed May 22, 1996);[4] and

(e) Plaintiffs Centerfold Club, Inc., Joseph Civith and 3405, Inc.'s Motion for Summary Judgment (Doc. No. 121, filed May 22, 1996).[5]

## Factual Background and Overview of Motions

This action consists of three separate cases consolidated for administrative purposes. The original action was commenced by Centerfold Club, Inc. against the City of St. Petersburg, Mayor David Fischer and Chief of Police Darrell Stephens (Doc. No. 1). Generally, the action alleges that the City's adoption and threatened enforcement of the Adult Use Zoning Regulation, adopted by Ordinance 72–G[6] and codified as 29–224, *et seq.*, violates the Plaintiff's constitutional rights. *See* Doc. No. 1, at ¶ 25.[7]

The second action was filed by Joseph Civith d/b/a "Foxy Lady," Dou–Han, Inc. d/b/a "Sixty Sixer Video Adult Center," Sancharger, Inc. d/b/a "The Blue Garter," and John Doe against the St. Petersburg City Council, the City of St. Petersburg, Chief of Police Darrell Stephens, City Attorney Michael Davis and State Attorney Bernie McCabe in their official capacities. *See* Doc. No. 1, filed in 94–152–CIV–T–24(B). The action generally alleges that adoption of Ordinance 72–G violates the Plaintiffs' constitutional rights.[8]

The final action, as amended, was filed by 3405, Inc. d/b/a "The Wharehouse" against the City of St. Petersburg and City Council Members Connie Kone, David T. Welch and Paul V. Yingst in their individual capacities. This action alleges that the City's Adult Use Zoning Regulation violates the Plaintiff's constitutional rights. In regard to the individual Council Members. Plaintiff alleges that

1. Plaintiff 3405, Inc. filed a response in opposition on December 4, 1995 (Doc. No. 100).

2. Plaintiff 3405, Inc. filed a response in opposition on December 14, 1995 (Doc. No. 103).

3. Defendants filed a response in opposition on June 4, 1996 (Doc. No. 126).

4. Plaintiff 3405, Inc. and Plaintiff Centerfold filed a response in opposition on June 26, 1996 (Doc. Nos. 129 & 134).

5. Defendants filed a response in opposition on June 25, 1996 (Doc. No. 131).

6. Ordinance 72–G as codified in Chapter 29–224 of the City of St. Petersburg Code provides that adult uses facilities may not be located within 700 feet of any churches, schools, child care facilities, public parks, residential uses, or other proposed adult uses facilities.

7. Plaintiff Centerfold, Club, Inc.'s complaint contains only one Count entitled Constitutional Violations Imposed by Ordinance 72–G Causes of Action. Paragraph 25 alleges that the Ordinance is unconstitutional for several reasons. The Court dismissed Plaintiff Centerfold's pendent state law claims on March 28, 1995 (Doc. No. 78).

8. The complaint contains nine counts: Count I—Improper Predicate for the Adoption of an Ordinance; Count II—The Ordinance does not allow for the Legitimate establishment of "Alternative Avenues of Communication"; Count III—The Ordinance lacks Adequate Procedural Safeguards and does not provide the Necessary Constitutionally Prompt Review and thus results in an Unconstitutional Prior Restraint; Count IV—The Ordinance is an Unconstitutional *Ex Post Facto* Law and is barred by the Doctrine of Equitable Estoppel; Count V—The Ordinance takes Property without Due Process of Law resulting in inverse condemnation and violation of the City of St. Petersburg Charter; Count VI—Denial of Equal Protection; Count VII—The Ordinance is Unconstitutionally Vague; Count VIII—The Ordinance is Unconstitutionally Overbroad; and Count IX—Attorney's Fees and Prayer for Relief.

The Court dismissed the action as against the Defendant City Council and Defendant State Attorney McCabe on October 31, 1994 (Doc. Nos. 59 & 57).

their decision to deny Plaintiff's request for a zoning variance violates Plaintiff's constitutional rights.[9]

There are four motions for summary judgment before the Court. The first was filed by Defendants Kone, Welch and Yingst in their individual capacities against Plaintiff 3405, Inc. in case number 94–160–CIV–T–24(B). This motion asserts the defense of absolute or qualified immunity. *See* Doc. No. 98.

Plaintiffs Dou–Han, Inc., 3405, Inc., Centerfold, Inc., and Sancharger, Inc. (i.e. all Plaintiffs except Joseph Civith) filed the second motion in case number 94–152–CIV–T–24(B). This motion contends that the Ordinance is unconstitutional because (1) the Ordinance does not have an adequate predicate for valid adoption and/or (2) the Ordinance is not the least restrictive means possible to accomplish the alleged objectives. *See* Doc. No. 113.

Defendants City of St. Petersburg, Mayor Fischer, Police Chief Stephens and City Manager Davis, in their official capacities, filed the third motion. This motion applies to all three cases. Defendants argue that as a matter of law the Ordinance is valid and constitutional. The motion divides into ten parts. Two of the parts attack the standing and position of the various Plaintiffs. The remaining eight parts undermine the various claims asserted by the Plaintiffs. Specifically, Defendants argue that: (1) the Ordinance has a Proper Motive and Legislative Purpose (i.e. Count I of Civith, et al.'s complaint and Count IX of 3405, Inc.'s amended complaint); (2) the Ordinance has a Proper Predicate (i.e. Count I of Civith, et al.'s complaint and

Count VIII of 3405, Inc.'s amended complaint); (3) the Ordinance provides for Adequate Alternative Avenues of Communication (i.e. Count II of Civith, et al.'s complaint and Count IV of 3405, Inc.'s amended complaint); (4) the Ordinance does not constitute a "Taking" Without Compensation or Equitable Estoppel (i.e. Counts IV and V of Civith et al.'s complaint and Count VII of 3405, Inc.'s amended complaint); (5) the Ordinance is not Overbroad or Vague (i.e. Counts VII and VIII of Civith et al.'s complaint and Count VI of 3405, Inc.'s amended complaint); (6) the Ordinance does not violate the Equal Protection Clause (i.e. Count VI of Civith, et al.'s complaint and Count XI of 3405, Inc.'s amended complaint); (7) the Ordinance is not a Prior Restraint and the Ordinance does provide for Procedural Safeguards (i.e. Count III of Civith, et al.'s complaint and presumably Counts I, V, X and XII of 3405, Inc.'s amended complaint[10]); and (8) the Ordinance is not a Bill of Attainder or *Ex Post Facto* Law (i.e. Count IV of Civith, et al.'s complaint). *See* Doc. No. 115.

The final motion was filed by Plaintiffs Centerfold, Civith and 3405 in case numbers 94–93–CIV–T–24(B) and 94–152–CIV–T–24(B). This motion maintains that the Ordinance is unconstitutional because it does not provide for adequate alternative avenues of communication. *See* Doc. No. 121.

In sum, while there are four motions before the Court raising several issues, the motions are duplicative in part. As a result, there are actually only eight issues before this Court:

**9.** The amended complaint contains fifteen counts: Count I—Unlawful Prior Restraint; Count II—Denial of Substantive Due Process; Count III—Unlawful Application to Existing Business; Count IV—Inadequate Alternative Avenues of Communication; Count V—Unbridled Administrative Discretion; Count VI—Unconstitutionally Overbroad and Vague; Count VII—Taking Property without Compensation and without Due Process of Law; Count VIII—Improper Predicate; Count IX—Improper Motive; Count X—Lack of Prompt Application Review; Count XI—Denial of Equal Protection; Count XII—Plaintiff is Entitled to an Impartial Quasi–Judicial Tribunal to Hear any Waiver Application Tendered; Count XIII—Denial of Civil Rights;

Count XIV—General Damages; and Count XV—Attorney's Fees.

On March 28, 1995 the Court dismissed Plaintiff's original complaint in part. (Doc. No. 78). The Court dismissed without prejudice Plaintiff's pendent state law claims. The Plaintiff in turn filed the instant amended complaint.

**10.** The Court notes that as for this portion of Defendants' motion, the argument does not necessarily correspond with specific Counts of the Plaintiffs' complaints. Moreover, nothing in Defendants' motion appears to address Counts II, III, XIII, and XIV of Plaintiff 3045, Inc.'s amended complaint.

(1) Is the Ordinance a valid content-neutral time, place and manner restriction?

 (i) Does the Ordinance serve a substantial governmental interest?

 (ii) Does the Ordinance allow for reasonable alternative avenues of communication?

 (iii) Is the Ordinance narrowly tailored? [11]

(2) Does the enforcement of the Ordinance constitute a "Taking" in violation of the Constitution?

(3) Is the enforcement of the Ordinance barred by the Doctrine of Equitable Estoppel?

(4) Is the Ordinance Overbroad or Vague?

(5) Does the Ordinance violate the Equal Protection Clause of the Constitution?

(6) Is the Ordinance an Unconstitutional Prior Restraint and does it provide Procedural Safeguards?

(7) Is the Ordinance a Bill of Attainder or *Ex Post Facto* law?

(8) Do the Council Defendants enjoy Qualified Immunity?

After initially reviewing the motions and responses, the Court set this matter for a hearing. In the notice of hearing, the Court noted those issues which it wanted addressed. The hearing was conducted on September 10, 1996. Mr. Winn (Counsel for all the Defendants), Mr. Dolan (Counsel for Plaintiff 3405) and Mr. Lirot (Counsel for Plaintiffs Dou–Han and Sancharger) were present. Mr. Dolan also stood in for Mr. Athanason (Counsel for Plaintiff Centerfold).

■ The hearing narrowed this case in two specific ways. First, the issue of standing was addressed and is hereby resolved. At the hearing, Counsel for the Plaintiffs advised the Court that Plaintiffs Civith and Centerfold had voluntarily closed their businesses and that the complaints did not allege any forced closures by the City's Nuisance Abatement Board. *See* Doc. No. 144 at 6 lines 22–23, 7 lines 17–24 and 8 lines 1–9.

In order for this Court to have jurisdiction there must be a "case or controversy" before the Court. It is not enough that a "real controversy existed when the lawsuit was filed, the controversy must be a 'live' controversy throughout all stages of the case." *Chiles v. Thornburgh,* 865 F.2d 1197, 1202 (11th Cir.1989) (citing *Burke v. Barnes,* 479 U.S. 361, 362–64, 107 S.Ct. 734, 735–37, 93 L.Ed.2d 732 (1987)). In light of the statements made by Counsel for the Plaintiffs at the hearing, this Court finds that Plaintiffs Civith and Centerfold lack standing to bring this action. No "live" controversy exists as to them. Accordingly, the action by Plaintiff Centerfold, Inc. against Defendants City of St. Petersburg, Mayor Fischer and Police Chief Stephens (Case No. 94–93) is dismissed. Additionally, the action filed by Plaintiff Civith (Case No. 94–152) is dismissed. The case still remains as filed by Plaintiffs Dou–Han and Sancharger against Defendants City of St. Petersburg, Police Chief Stephens and City Attorney Davis.

Second, the hearing brought to the forefront the issue of adequate alternative avenues of communication. The parties conceded that the primary issue before the Court is the constitutionality of the Ordinance. If the Ordinance was found to be unconstitutional, the only remaining issue for trial would be the nominal damages sustained by Plaintiffs Dou–Han, Sancharger and 3405, Inc. In arguing the constitutionality of the Ordinance, the parties further stressed the issue of adequate alternative avenues of communication. In their respective motions, both the Plaintiffs and the Defendants state there are no genuine issues of material fact existing to preclude the entry of summary judgment. *See* Doc. Nos. 115 & 121.[12] Each party contends that as a matter

---

**11.** Although the Supreme Court in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), only noted the first and second requirements, the Eleventh Circuit in *International Eateries of America, Inc. v. Broward County, Fla.,* 941 F.2d 1157, 1162 (11th Cir. 1991), observed that this was merely on oversight. "[W]e do not believe that the Renton Court intended to eliminate the narrow-tailoring requirement from time, place, and manner analysis...."

**12.** The issue of adequate alternative avenues of communication is the subject of two motions for summary judgment. Defendants City of St. Petersburg, Fischer, Stephens and Davis moved for

of law there are adequate or inadequate alternative avenues of communication.

The Court adjourned the September 10, 1996 hearing and reviewed the submitted materials concerning the issue of adequate alternative avenues of communication. In reviewing the materials, it became evident that the issue turned on the affidavits of Plaintiffs' land planning expert Bruce McLaughlin and Defendants' land planning expert Ralph E. Stone. Accordingly, the Court set this matter for an evidentiary hearing. The hearing was conducted on November 21, 1996.

### Summary Judgment Standard

The Eleventh Circuit has discussed the standard for granting summary judgment:

> Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c).

*Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (1993), *reh'g and reh'g en banc denied*, 16 F.3d 1233 (11th Cir.1994).

The Eleventh Circuit recognized the seminal case concerning summary judgment, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), by highlighting the following passage:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial.

*Hairston*, 9 F.3d at 918.

Finally, the parties' respective burdens and the Court's responsibilities were outlined:

> The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. *Taylor v. Espy*, 816 F.Supp. 1553, 1556 (N.D.Ga. 1993) (citation omitted). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. *Welch v. Celotex*, 951 F.2d 1235, 1237 (11th Cir.1992); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.[,]* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

> Applicable substantive law will identify those facts that are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* For factual issues to be considered genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56. It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of

---

summary judgment on the issue on May 22, 1996 (Doc. No. 115). Plaintiffs Centerfold, Joseph Civith and 3405, Inc. also moved for summary judgment on the issue on May 22, 1996 (Doc. No. 121). The Court is aware that Plaintiffs' response to Defendants' motion suggests that the existence of disputed material facts precludes the entry of summary judgment in favor of the Defendants. Doc. No. 129 at 4. However, at the September 10, 1996 and November 21, 1996 hearings, Plaintiffs argued that there were no disputed material facts and that the Court could make a determination on this issue.

material fact, but rather determine whether such issues exist to be tried. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. The Court must avoid weighing conflicting evidence or making credibility determinations. *Id.* at 255, 106 S.Ct. at 2513–14. Instead, "[t]he evidence of the non-movant is to be believed in his favor." *Id.* Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 933–934 (11th Cir. 1989) (citation omitted).

*Id.* at 918–19. *See Mulhall v. Advance Sec. Inc.,* 19 F.3d 586, 589–90 (11th Cir.1994); *Howard v. BP Oil Co.,* 32 F.3d 520, 523–24 (11th Cir.1994).

## Discussion

### I. Is the Ordinance a valid content-neutral time, place, and manner restriction?

#### A. Improper Predicate and Motive— Does the Ordinance further a Substantial Government Interest?

Count I of Plaintiffs Civith, et al.'s complaint alleges that the Ordinance is unconstitutional because it lacks a proper predicate. Specifically, paragraphs 50 and 51 allege:

50. The ordinance at issue herein as applied to the real property, business owned and operated by Plaintiffs, and Plaintiffs expressive and associational rights, is arbitrary and capricious, was adopted without substantial competent evidence to support its application to the Plaintiffs, and bears no reasonable relationship to the lawful exercise of police power, thereby denying Plaintiffs substantive due process in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and the due process clauses of the Florida Constitution.

51. During the public hearings held pursuant to the adoption process of the Ordinance, no substantial competent evidence of local data was introduced by Defendants to indicate that adult uses had any greater impact than any other specific use in the subject areas of the CITY as pertains to the recitals contained in the Ordinance.

Counts VIII and IX of Plaintiff 3405, Inc.'s amended complaint allege that the Ordinance is unconstitutional because it lacks a proper predicate and was improperly motivated. Paragraphs 85 and 86 of Count VIII allege:

85. Section 229–224, *et seq.,* City of St. Petersburg Code, as applied to the business owned and operated by Plaintiff was adopted on the basis, not of competent, substantial evidence, but on the basis of innuendo, hearsay, myths and fabrications. The so-called "studies" upon which the City purported to rely in the adoption of its Adult Uses Zoning Regulations are seriously flawed, and are not academically, professionally or scientifically sound.

86. In contrast, owners of other Adult Uses in the City provided Defendant, City, with competent, substantial evidence that the alleged predicates to the Adult Use Zoning Regulations are based on allegations that are not supported in fact or at law.

Paragraphs 89 through 93 of Count IX allege that the Defendants' motive in enacting the Ordinance was to attack the content of the businesses in question and to secure the most restrictive regulations. Thus, paragraph 94 alleges that the Ordinance was adopted with improper motives.

Both Plaintiffs and Defendants have moved for summary judgment on the issues of improper predicate and improper motive. Plaintiffs' motion (Doc. No. 113) contends that "there was no competent, substantial evidence before the City that allowed the City to reasonably believe that Adult Uses in the City of St. Petersburg caused adverse secondary effects. In the absence of at least reasonable belief that the City's Adult Uses were causing adverse secondary effects, the City's Adult Use Zoning Ordinance is unconstitutionally content-based." Doc. No. 113, at ¶¶ 2–3. The motion also argues that the Ordinance is unconstitutional because it is not "the least restrictive means."

Defendants' motion (Doc. No. 115) contends that the ordinance is properly analyzed as a content-neutral time, place and manner

restriction because "the Ordinance was designed to mitigate the secondary affects (sic) of adult use establishments and the City's reliance on studies conducted by other governments is proper and need not be based solely on local experience." Doc. No. 115, at ¶ 2. Defendants' memorandum in support of the motion argues that any inquiry into the motivation of the City Council is improper. Doc. No. 116, at 8.

 As a threshold concern, the Court notes that Plaintiffs' argument raises two issues. First, to the extent that Plaintiffs argue that the Ordinance is not a content-neutral restriction because the City failed to prove that adult businesses cause secondary effects, Plaintiffs' "argument impermissibly confuses distinct aspects of the City of Renton test. Content neutrality focuses on the City's purposes in enacting the Ordinance." *ILQ Inv., Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir.1994).[13] As the Supreme Court noted in *City of Renton, et al. v. Playtime Theatres, Inc., et al.*, 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986), where the ordinance "is aimed not at the *content* ..., but rather at the *secondary effects,*" the ordinance is content-neutral. *See Phillips v. Borough of Keyport*, 107 F.3d 164, 172 (3d Cir.1997); *ILQ Inv., Inc.*, 25 F.3d at 1416 (holding that where ordinance's purpose is "to lessen undesirable secondary effects attributable to those businesses, such as increased crime, lower property values, or deteriorating residential neighborhoods," the ordinance is evaluated as a content-neutral time, place and manner restriction); *Ambassador Books & Video, Inc. v. City of Little Rock, Ark.*, 20 F.3d 858, 861 (8th Cir.1994); *Holmberg v. City of Ramsey*, 12 F.3d 140, 143 (8th Cir.1994) (*en banc*) (stating that "[i]f the City's ordinance serves a purpose unrelated to the expressive content of the sexually oriented businesses the City wants to regulate, the ordinance is deemed neutral, even though the ordinance may affect those businesses incidentally"); *International Eateries of America, Inc. v. Broward County, Fla.*, 941 F.2d 1157, 1162 n. 3 (11th Cir.1991) (noting that in determining whether ordinance is content-neutral, a court should "glean[ ] the government interest at stake from the ordinance itself rather than implying one where none is evident in the ordinance"); *Alexander v. City of Minneapolis*, 928 F.2d 278, 282 (8th Cir.1991) (holding that because "ordinance does not ban adults-only businesses altogether, the District Court ... correctly treated [it] as a form of time, place and manner regulation"). However, a determination that an ordinance is content-neutral does not necessarily mandate a conclusion that the ordinance is constitutional. Rather, as a content-neutral restriction, the ordinance must pass the "intermediate scrutiny" test. *Phillips*, 107 F.3d at 172. The ordinance must (1) serve a substantial government interest; (2) allow for reasonable alternative avenues of communication; and (3) be narrowly tailored to serve the governmental interest at issue. *International Eateries*, 941 F.2d at 1161–62. Thus, Plaintiffs' argument that the Ordinance is not content-neutral because it lacks a proper predicate is, in fact, an argument that the Ordinance does not serve a substantial governmental interest.

 As the Third Circuit noted in *Phillips*, it is the legislature's burden to prove that the ordinance is constitutional. "[I]t must come forward with 'evidence of incidental adverse social effect that provides the important governmental interest justifying reasonable time, place and manner restrictions on speech or expressive conduct.'" *Phillips*, 107 F.3d at 173 (quoting *Mitchell v.*

---

13. In *ILQ Inv., Inc. v. City of Rochester*, 25 F.3d 1413 (8th Cir.1994), the District Court preliminarily enjoined the City of Rochester from enforcing an ordinance similar to the instant ordinance. The District Court found that the ordinance was impermissibly vague. On appeal, ILQ argued that the ordinance was "not content-neutral because Rochester ha[d] failed to prove that the City's adult businesses cause adverse secondary effects." *Id.* at 1416. The Eighth Circuit rejected this argument.

"That argument impermissibly confuses distinct aspects of the City of Renton test. Content neutrality focuses on the City's purposes in enacting the ordinance. Here, it is clear that the Common Council targeted not the content of Downtown Book and Video's materials, but the anticipated impact of adult businesses on their surrounding communities. On this record, Ordinance No. 2590 is indisputably content-neutral." *Id.* (citation omitted).

*Commission on Adult Entertainment Establishments,* 10 F.3d 123, 133 (3d Cir.1993)). The legislature "shoulders the burden of building an evidentiary record that will support a finding that it reasonably believed [the governmental interests] would be jeopardized in the absence of an ordinance and that this · ordinance is reasonably tailored to promote those interests." *Id.* at 173.

■ The second threshold issue concerns Plaintiffs' argument that there must be "adverse secondary effects established by competent substantial evidence" in order for the Ordinance to be constitutional. Doc. No. 113, Memorandum in Support, at 6. As the Eleventh Circuit in *International Eateries* observed, the *Renton* opinion only requires that "the enacting body must have a *reasonable basis* for its belief that the harm to be protected against in fact exists." *International Eateries,* 941 F.2d at 1162 (emphasis added). Accordingly, while the burden rests with the Defendants to "justify" the Ordinance by establishing a "link between the regulation and the asserted governmental interest," the link need only be supported by a

reasonable belief and not by substantial competent evidence. *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 930–31; *Phillips,* 107 F.3d at 173. Plaintiffs' motion seems to concede this when it states, "Ultimately, the end result of the authority cited above indicates unequivocally that for the City of St. Petersburg Adult Use Zoning Ordinance to be Constitutional, there must be a *reasonable belief* that it is designed to combat adverse secondary effects." Doc. No. 113, Memorandum in Support at 5 (emphasis added).[14]

■ The instant Ordinance does not ban all adult use establishments. Rather, the Ordinance regulates the location of such establishments. Adult use establishments are permitted in commercial, central business district and retail/office/residential zoning and land use districts. Within these areas, however, adult use establishments must be located at least 700 feet away from any property within a residential district, any portion of a mixed use zoning district developed and utilized as a non-accessory residential use, and/or any church, school, child care facility or public park.[15] Moreover, Section 29–

**14.** There are state court cases addressing the constitutionality of a zoning ordinance which use the phrase "substantial competent evidence." In *Board of County Comm'rs of Brevard County v. Snyder,* 627 So.2d 469, 474 (Fla.1993), the Florida Supreme Court observed that while "a board's legislative action is subject to attack in circuit court ..., in deference to the policy-making function of a board when acting in a legislative capacity, its actions will be sustained as long as they are fairly debatable." The Court further noted that "rulings of a board acting in its quasi-judicial capacity are subject to review by certiorari and will be upheld only if they are supported by substantial competent evidence." *Id.* (citing *De Groot v. Sheffield,* 95 So.2d 912 (Fla.1957)).

**15.** Section (e) of the Ordinance describes the "Location of Adult Uses":
(1) No adult use establishment may be located within 700 feet of any of the following uses which is legally in existence or has received legal authority to locate on a lot or parcel:
a. any property within a residential district;
b. any portion of a mixed use zoning district developed and utilized as a nonaccessory residential use; or
c. any church, school, child care facility or public park;
(2) No adult use establishment may be located within 700 feet of any other adult use establishment which is legally in existence or has

received legal authority to locate on a lot or parcel.
(3) Neither the residential districts described in subparagraph (1)a. nor any of the uses described in subparagraphs (1)b. or c. may be located within 700 feet of any adult use establishment which is legally in existence or has received legal authority to locate on a lot or site. Such legal authority shall be presumed where there is a valid certificate of compliance or adult use permit for the adult use establishment on the lot or site.
(4) The distance requirements under sections (1), (2) and (3) above shall be measured along a straight line from the nearest property line within a residential district or the nearest property line of the church, school, child care facility, public park, residential use in a mixed use zoning district or adult use to the closest property line of the adult use. In a multi-tenant or multi-user building, such as a shopping center, said distance requirement shall be measured from the unit or closest portion of the building, unit or structure utilized by and containing or being utilized by any facet of the adult use establishment.
(5) Nothing in this Section shall be construed to permit the operation of any business or the performance of any activity prohibited under any other part of this Section, state or county law, other ordinance of the City or the City Code. Additionally, nothing

224(a) provides that the purpose of the Ordinance is:

> to establish reasonable and uniform regulations that will protect the health, peace, safety, and general welfare of the people of St. Petersburg. The provisions of this section (ordinance), acting alone, or together with other applicable ordinances of St. Petersburg have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including adult material. Similarly, it is not the intent nor effect of this section (ordinance) to restrict or deny access by adults to adult materials or expression protected by the First Amendment, or to deny access by distributors and exhibitors of adult uses to their intended market.

Accordingly, this Court finds that the Ordinance is a content-neutral time, place and manner restriction and turns to the issues of improper motive and substantial governmental interest.

■ Plaintiffs' argument concerning improper motive is easily addressed. Having reviewed the record, particularly the transcripts of the hearings held by the City prior to the enactment of the Ordinance (Doc. No. 29, Vol. 10), this Court finds that the Defendants' *predominate concern* in enacting the Ordinance was the secondary effects of adult establishments. Following the lead of the Supreme Court in *United States v. O'Brien,* 391 U.S. 367, 383–84, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672, and *City of Renton,* the Court, absent a finding other than noted above, will not inquire into the alleged improper motivations of the Defendants.

> It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. . . . What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.

*City of Renton,* 475 U.S. at 48, 106 S.Ct. at 929 (quoting *United States v. O'Brien,* 391

U.S. at 383–84, 88 S.Ct. at 1682–83). Accordingly, Plaintiffs' motion on the issue of improper motive is denied and Defendants' motion is granted. Summary judgment is entered in favor of the Defendants as to Count IX of Plaintiff 3405, Inc.'s amended complaint. This count is dismissed.

■ The Court also finds that the Ordinance is designed to serve a substantial governmental interest and that the City reasonably believed that the studies of other cities upon which it relied were relevant to the problems the City addressed in the Ordinance. Pursuant to *Renton,* the City is entitled to rely on the experiences of other cities. "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931. Although Plaintiffs admit that the City relied upon ten studies conducted by other cities, Plaintiffs argue that *Renton* does not allow a city to rely on the studies of other cities where the ordinance in question applies retroactively and/or where the city in question already had an existing adult uses ordinance upon which it could base its ordinance. Doc. No. 113 at 4. This Court rejects Plaintiffs' argument. Nothing in the *Renton* or *International Eateries* opinions suggests that a city cannot rely on the studies of other cities in enacting an adult uses ordinance where the city in question already had such an ordinance. Rather, under *Renton,* "the enacting body must have a reasonable basis for its belief that the harm to be protected against in fact exists. The City need not conduct its own studies to make this determination." *International Eateries,* 941 F.2d at 1162.

■ Plaintiffs further argue that the record fails to support a "reasonable belief" that the secondary effects of the adult use establishments exist because there is no "substan-

---

in this Section shall be construed to authorize, allow or permit the establishment of any business, the performance of any activity, or the

possession of any item, which is obscene under the judicially established definition of obscenity.

tial competent evidence" to support such a belief. As previously noted, nothing in *Renton* or the *International Eateries* opinions indicate that the City's decision must be supported by substantial competent evidence. Additionally, the Court notes that prior to enacting the Ordinance, the City Council reviewed studies and reports prepared for Amarillo, Texas; Phoenix, Arizona; New York, New York; Detroit, Michigan; Beaumont, Texas; Houston, Texas; Austin, Texas; Oklahoma City, Oklahoma; Indianapolis, Indiana; and Seattle, Washington. The City Council also considered testimony from residents and businesses in the City and reports and testimony from the City's Planning Director, Zoning Manager and Police Department. Having reviewed these materials, this Court finds that the City had a "reasonable belief" that the secondary effects of adult businesses exist. Accordingly, Plaintiffs' motion on the issue of improper predicate is denied and Defendants' motion is granted. Summary judgment is entered in favor of the Defendants as to Count I of Plaintiffs' Civith, et al.'s complaint and as to Count VIII of Plaintiff 3405, Inc.'s amended complaint.

### B. Does the Ordinance allow for Adequate Alternative Avenues of Communication?

The test for determining whether the Ordinance allows for "adequate alternative avenues of communication" is one of reasonableness. Adult businesses:

> must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees ... [A]lthough we have cautioned against the enactment of zoning regulations that have the "effect of suppressing or greatly restricting access to lawful speech," ... we have never suggested that the First Amendment compels the Government to ensure that Adult theaters ... will be able to obtain sites at bargain prices ... In our

view, the First Amendment requires only that Renton refrain from effectively denying respondents a *reasonable opportunity to open and operate* an adult theater within the city....

*Id.* (quoting *Renton,* 475 U.S. at 54, 106 S.Ct. at 932) (citations omitted). Unfortunately for this Court and other trial courts, the issue of reasonableness, and how economic considerations affect it, is not easily resolved. "Like the opinions of other courts addressing the subject, neither *Walnut* or *Topanga* [16] provided a bright line rule for determining whether or not a city has provided a 'reasonable opportunity to open and operate an adult [business] within the city, or whether adequate alternative sites exist for adult businesses'." *3570 East Foothill Blvd., Inc. v. City of Pasadena,* 912 F.Supp. 1257, 1264 (C.D.Cal.1995), *aff'd,* 99 F.3d 1147 (9th Cir. 1996). A review of Circuit Court opinions does, however, provide some ground rules which frame the analysis.

In discussing the relationship between "a reasonable opportunity to open and operate" and commercial viability, the Fifth Circuit in *Woodall v. City of El Paso ("Woodall I"),* 959 F.2d 1305, 1306 (5th Cir.) (*per curiam* ) *modifying* 950 F.2d 255 (5th Cir.), *cert. denied,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992), drew a distinction between economically unsuitable land and physically or practically unsuitable land. The *Woodall I* court interpreted *Renton* as standing for the proposition that "land with physical characteristics that render it unavailable for any kind of development, or legal characteristics that exclude adult businesses, may not be considered available for constitutional purposes." *Id.*

The Ninth Circuit in *Topanga* rejected the Fifth Circuit's distinction.

> This easily blurred line between economic and physical suitability creates doctrinal problems. If the suitability of a relocation site always can be couched in terms of

---

**16.** There are two *Walnut* opinions. The Ninth Circuit originally addressed the issue prior to the Supreme Court's opinion in *Renton.* In light of *Renton,* the Supreme Court remanded the first *Walnut* opinion to the Ninth Circuit who in turned remanded the case to the district court. The district court again found the ordinance un-

constitutional and the Ninth Circuit affirmed in part in *Walnut Properties, Inc. v. City of Whittier,* 861 F.2d 1102 (9th Cir.1988). The Ninth Circuit revisited the issue of adequate alternative avenues of communications again in 1993 in *Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524 (9th Cir.1993).

economic suitability, under *Renton* no relocation site could ever be considered unreasonable. On the other hand, if a court attempts artificially to maintain the line between physical and economic suitability, it may often be led to consider the economic factor *sub rosa* which is forbidden under *Renton.*

*Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1529 (9th Cir.1993). The *Topanga* court then expanded upon the underlying rational of this distinction. Echoing the Fifth Circuit's observation that *Renton* "obviously contemplated that there was a 'market' in which businesses could purchase or lease real property on which business could be conducted" *Id.* at 1529 (citing *Woodall,* 959 F.2d at 1305), the *Topanga* court then concluded *Renton* does not forbid a court from considering "economics when evaluating whether a particular relocation site is in fact part of the real estate market." *Id.* at 1530.

> For purposes of *Renton,* the distinction is between consideration of economic impact *within* an actual business real estate market and consideration of cost to determine whether a specific relocation site *is part* of the relevant market. A court may not consider the former, but it may consider the latter when determining whether a specific site is reasonably suitable for the operation of a business.

*Id.*

Having drawn this conclusion, the *Topanga* court then noted five factors to consider in determining whether a specific relocation site is available. First, "the requirement of potentiality connotes genuine possibility." *Id.* at 1531. A relocation site is not available "when it is unreasonable to believe that it would ever become available to *any commercial enterprise.*" *Id.* (emphasis added). Second, "relocation sites that are reasonably accessible to the general public may also be part of the market." *Id.* Third, "areas in manufacturing zones which have a proper infra-structure such as sidewalks, roads and lighting may be included in the market." *Id.* Fourth, "potential sites must be reasonable relocation sites for *some commercial enterprise* before they can be considered part of

the relevant market." *Id.* (emphasis added). Finally, "those relocation sites which are commercially zoned are part of the market." *Id.*

In a subsequent appeal within the *Woodall* case, the Fifth Circuit revisited its earlier opinion in light of the Ninth Circuit's *Topanga* opinion. While the Fifth Circuit neither withdrew from its previously stated position nor adopted the five factors of *Topanga,* it did offer some insight into what it considered a reasonable relocation site.

> The relevant consideration is whether the physical characteristics of the site present an unreasonable obstacle to opening a business; an obstacle that can be overcome without incurring unreasonable expense does not make a site unavailable, but an obstacle that cannot reasonably be overcome renders the site unavailable. Thus, in determining whether there are sufficient sites available, the finder of fact may exclude land under the ocean, airstrips of international airports, sports stadiums, areas not readily accessible to the public, areas developed in a manner unsuitable for any generic commercial business, areas lacking in proper infrastructure, and so on. *However, the fact that a site may not be commercially desirable does not render it unavailable. It is not relevant that a relocation site will result in lost profits, higher overhead costs, or even prove commercially unfeasible for an adult business.* There is no requirement that an adult business be able to obtain existing commercial sites at low cost and with market access to ensure its prosperity. As we have stated time and again, commercial viability is not a relevant consideration.

*Woodall v. City of El Paso ("Woodall II"),* 49 F.3d 1120, 1124 (5th Cir.1995) (citations omitted) (emphasis added). Finally, the *Woodall II* court commented upon how a district court should evaluate whether the relocation sites within the relevant real estate market provide adequate alternative avenues of communication.

> Where a zoning ordinance requires that adult businesses maintain a certain distance from one another, merely knowing

the number of acres available is not particularly enlightening ... We are therefore not particularly concerned with determining how much acreage was actually available ... *What is important is the number of adult business locations that the acreage will support given the spacing requirements. That is what determines whether there are sufficient alternative sites available, and that is our focus in reviewing the sufficiency of the evidence.*

*Id.* at 1125 (emphasis added).

Additionally, the Eighth Circuit in *Alexander v. City of Minneapolis,* 928 F.2d 278, 283 (8th Cir.1991), concluded that testimony concerning whether anyone would lease property to an adult business is irrelevant because adult business operators must fend for themselves. " 'The inquiry for First Amendment purposes is not concerned with economic impact ...' Additional testimony from Alexander that no one would sell or lease property on which he could relocate his businesses was also irrelevant to the First Amendment inquiry." *Id.* (citation omitted). The Fourth Circuit echoed this conclusion in *D.G. Restaurant Corp. v. City of Myrtle Beach,* 953 F.2d 140, 147 (4th Cir.1991), when it stated, "The decision to restrict adult businesses to a specific area does not oblige the city to provide commercially desirable land."

These Circuit opinions provide insight into *Renton*'s proclamation prohibiting the trial court from considering the commercial viability of a relocation site in determining whether a relocation site is available. Although these opinions disagree as to whether to describe the "availability" of a relocation site in terms of economic or physical considerations,[17] they do establish minimum standards.

▬▬ First, these opinions acknowledge that *Renton* presumes the existence of a relevant real estate market. *Topanga,* 989 F.2d at 1530; *Woodall I,* 959 F.2d at 1305. Second, whether a relocation site is available and part of the relevant real estate market is measured in terms of "genuine possibility." *Topanga,* 989 F.2d at 1531. While this term is not definitive, certain examples provide insight. Physical considerations may render a site unavailable. A site is not a genuine possibility when it is "under the ocean, airstrips of international airports, sports stadiums, areas not readily accessible to the public, areas developed in a manner unsuitable for *any generic commercial business,* areas lacking in proper infrastructure, and so on." *Woodall II,* 49 F.3d at 1124 (emphasis added); *see also Topanga,* 989 F.2d at 1532. Additionally, economic considerations may render a site unavailable. A site is not a genuine possibility "when it is unreasonable to believe that it would ever become available to *any commercial enterprise." Topanga,* 989 F.2d at 1531 (emphasis added). Third, when a site is part of the relevant market and available to any commercial enterprise, it is irrelevant whether or not the owner will lease the land to the adult establishment. *Alexander,* 928 F.2d at 283, 3570 *East Foothill Blvd., Inc.,* 912 F.Supp. at 1264; *O'Malley v. City of Syracuse,* 813 F.Supp. 133, 147 (N.D.N.Y.1993) (concluding that "Plaintiffs' argument that much of four percent [available land] is already occupied by other businesses and is hence not truly 'available' is without merit"). Restrictive covenants or leases between third parties rendering a site *unavailable to an adult establishment* does not render the site unavailable for First Amendment purposes. Municipal or local governments are under no obligation either to dictate that third parties make their land available to adult establishments or to consider whether such private restrictions in fact exist. The critical issue is whether the local government has made the land available for any commercial enterprise. "The City is not required to provide Alexander with an actual site available to relocate his theatres." *Alexander,* 928 F.2d at 284. Fourth, hazardous waste or other factors which render the land more expensive to purchase or lease are also irrelevant. The First Amendment does

---

17. *See Topanga,* 989 F.2d at 1529 (stating *Renton* does not prohibit "the consideration of cost to determine whether a specific relocation site *is part* of the relevant market"); *Woodall II,* 49 F.3d at 1124 (holding that while it is "not relevant that a relocation site will result in lost profits, higher overhead costs, or even prove commercially unfeasible for an adult business," a physical "obstacle that cannot reasonably be overcome renders the site unavailable").

not "compel[ ] the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices." *Renton*, 475 U.S. at 54, 106 S.Ct. at 932.

■ Finally, once the Court determines the relevant market, "there is no constitutional requirement setting forth how many sites or what percentage of the land must be available for adult businesses." *3570 East Foothill Blvd., Inc.*, 912 F.Supp. at 1265. Courts have considered a variety of factors, "including the percentage of land theoretically available to adult businesses, the number of sites potentially available in relation to the population of the city, the number of sites compared with the existing number of adult businesses, or the number of businesses desiring to offer adult entertainment." *Id.*

■ Using these opinions as guidance, the Court now turns to the instant Ordinance. According to the City's Land Use Plan, 82.2% of the City is designated as residential, preservation, recreation/open space or public/semi-public land uses. *See* Doc. No. 65 at ¶ 4, Affidavit of Ralph E. Stone. Accordingly, this leaves approximately 17.8% of the City for development in industrial, commercial, office, retail and central business district land uses. *Id.* However, adult uses are permitted in the commercial, central business district and retail/office/residential land use categories which only comprise approximately 6.3% or 1,662 acres of the City. *Id.* at ¶ 12. After applying the Ordinance, the City states that only approximately 178 acres are available for adult use establishments. Doc. No. 76 at ¶ 24, Supplemental Affidavit of Ralph E. Stone. Initially, the City argued that this acreage supported only fifteen (15) general locations for adult use establishments. *See* Doc. No. 65. However, the City now contends that it supports a minimum of twenty (20) adult use establishments. *See* Doc. No. 76.

Plaintiffs take issue with the number of sites offered as alternative avenues by the City. Plaintiffs' expert, Mr. McLaughlin, originally argued that there were a maximum of six sites and a minimum of four sites available. At the hearing, however, Mr. McLaughlin concluded that there were a maximum of three available sites: one in the southwest quadrant of the Tryone Mall area; and one or two in the Thunder Dome area. Doc. No. 170 at 60 lines 6–8. Plaintiffs argue that this dispute does not give rise to a disputed material fact mandating the denial of either party's motion. Rather, Plaintiffs maintain this Court can examine the proposed sites and determine as a matter of law what the exact amount of proposed sites is. Once the Court has made this determination, the Plaintiffs argue that the Court must consider the number of sites in relation to the population in units of per 1,000 persons. The Court must then consider this ratio to the adult use ratio in other cities. *See* Doc. Nos. 122 & 129.

At the November 21, 1996 hearing, the Court received evidence and heard testimony from Mr. Stone, Director of Planning, Housing and Development Review Services of the City, and Mr. McLaughlin, a consultant hired by the Plaintiffs and a member of the American Institute of Certified Planners. Specifically, the Court reviewed the twenty sites considered "available" by the City. The Court looked at enlarged aerial photos, considered the location and zoning status of the proposed sites and heard testimony from Mr. Stone defending the twenty sites and from Mr. McLaughlin discussing why all but three of the sites are unavailable.

The twenty sites divide into eight areas. The first area is referred to as the "Central Plaza" area and supports two sites. This area is noted in Exhibit 1B of Mr. Stone's Supplemental Affidavit (Doc. No. 76). An enlargement of this exhibit, Exhibit 1–A, was presented at the hearing. This area consists of approximately 11.19 acres.

The second area is located in north St. Petersburg, at the intersection of 38th Avenue and 34th Street. This area is noted in Exhibit 2B of Mr. Stone's Supplemental Affidavit (Doc. No. 76), an enlargement of which was submitted at the hearing as Exhibit 2–A. This area consists of approximately 2.60 acres and supports one site.

The third area is located on and around the Pier of St. Petersburg. This area is noted in Exhibit 3B of Mr. Stone' Supple-

mental Affidavit (Doc. No. 76), an enlargement of which was submitted at the hearing as Exhibit 3–A. This area consists of approximately 4.13 acres and supports one site.

The fourth area is located in the northeast part of the city, at the intersection of 9th Street North and Gandy Boulevard. This area is noted in Exhibit 4B of Mr. Stone's Supplemental Affidavit (Doc. No. 76), an enlargement of which was submitted at the hearing as Exhibit 4–A. This area consists of approximately 28.73 acres and supports two sites.

The fifth area is located in downtown St. Petersburg, near the Florida Thunder Dome or the Tropicana Dome. This area is noted in Exhibit 5B of Mr. Stone's Supplemental Affidavit (Doc. No. 76), an enlargement of which was submitted at the hearing as Exhibit 5–A. This area consists of approximately 41.05 acres and supports five sites. At the hearing, Mr. Stone specifically commented that the area on which the Thunder Dome is located was not included in determining the number of potential sites or acreage. Doc. No. 170 at 20 lines 13–21.

The sixth area is located between U.S. 19 and 34th Street and the intersection of 22nd Avenue north. This area is noted in Exhibit 6B of Mr. Stone's Supplemental Affidavit (Doc. No. 76), an enlargement of which was submitted at the hearing as Exhibit 6–A. This area consists of approximately 18.70 acres and supports two sites.

The seventh area is known as the Tyrone Mall area and is located at the intersection of Tyrone Boulevard and Park Street. This area is noted in Exhibit 7B to Mr. Stone's Supplemental Affidavit (Doc. No. 76), an enlargement of which was submitted at the hearing as Exhibit 7–A. This area consists of approximately 6.25 acres and supports two sites.

The eighth area is located at the intersection of 22nd Avenue North and 72nd Street. This area is noted in Exhibit 8B to Mr. Stone' Supplemental Affidavit (Doc. No. 76), an enlargement of which was submitted at the hearing as Exhibit 8–A. This area consists of approximately 65.51 acres and supports five sites.

Plaintiffs' objections to the various sites are best summarized in Plaintiffs' Exhibit 2 (Data Related to a Site Specific Analysis on Alternative Avenues of Communication for Adult Uses) submitted at the hearing. Unfortunately, for organizational purposes, the Plaintiffs' objections do not follow the order of City's exhibits.

Plaintiffs first object to the sites suggested at the intersection of Gandy Boulevard and 9th Street (i.e. Defendants' Fourth Area). Although Plaintiffs note that this area is commercially zoned, they contend it is unavailable because it is subject to restrictive covenants or master leases by the current owners, NationsBank and K–Mart, and because to the extent that K–Mart runs an automotive services facility on the grounds, there may be hazardous waste liability. Doc. No. 170 at 41 lines 5–15.

Plaintiffs next object to the sites suggested at the intersection of Gandy Boulevard and 9th Street and Executive Center Drive (i.e. still Defendants' Fourth Area). Again, although Plaintiffs note that the area is commercially zoned, they contend the area is unavailable because it is subject to restrictive deeds or leases and a preservation easement. Plaintiffs note that the area is only available for offices and not generic commercial purposes because of the master leases. *Id.* at 43 lines 16–25.

The Plaintiffs next object to the site suggested at the Defendants' Second Area. Again, Plaintiffs concede that the area is commercially zoned, but argue that area is unavailable because of likely hazardous waste problems and lack of frontal access. *Id.* at 45 lines 15–17 & 46 lines 2–16.

The next objection concerns Defendants' Sixth Area. Once again, Plaintiffs note that the area is commercially zoned, but contend that it is unavailable because the land is subject to restrictive leases that preclude adult establishments.

The next objection concerns Defendants' First Area. Plaintiffs' objections break down this area into several parts. First, concerning the area east of 34th Street and north of Burlington, Plaintiffs note that this area is located by the U.S. Post Office parking lot,

which is a permanent occupancy not likely to relocate. Plaintiffs do note, however, that this area is commercially zoned. Second, concerning the area between Burlington and 1st Avenue, while the land is commercially zoned, the entire area is owned by Montgomery Ward. Thus, Plaintiffs argue that it is a single occupant/tenant lot, parts of which are within the segregated distance, thereby disqualifying the entire lot. Additionally, Plaintiffs argue that it is unavailable because is it occupied by a permanent occupant not likely to relocate. Finally, concerning the area along Central Avenue between 34th Street and 32nd Street, Plaintiffs argue that although the land is commercially zoned, the area is unavailable because it is subject to restrictive covenants precluding adult businesses.

Plaintiffs next object to Defendants' Fifth Area. Plaintiffs break this area into several parts. First, concerning the area west of the interstate, while the area is zoned commercial, the area is zoned commercial intensive and does not permit retail uses unless they are primarily a display use, making it unavailable for an adult book store or modeling studio. It would, however, permit a theater, but Plaintiffs suggest hazardous waste problems make this unlikely. Second, concerning the area south of 1st Avenue between 16th Street and the interstate, the area, although commercially zoned, is unavailable because it is occupied by a major use and a smaller permanent occupant not likely to relocate. The area also has hazardous waste problems. Plaintiffs also suggest that much of this land is going to be acquired by the City. Third, concerning the area along 1st Avenue south between 15th Street and 11th Street, Plaintiffs concede that although there may be some hazardous waste problems, this area would support one or two sites.

As for Defendants' Third Area (the Pier), Plaintiffs maintain that although the area is commercially zoned, the area is unavailable because most of it is owned by the City and while the City does not have any restrictive covenants, the City will not lease the land to an adult establishment.

As for Defendants' Eighth Area (Tryone Mall), Plaintiffs again note that the area is commercially zoned, but argue that it is unavailable because the area is subject to restrictive deeds or leases and/or because the area is occupied by tenants not likely to relocate.

Finally, concerning the Defendants' Seventh Area, Plaintiffs again object, even though the area is commercially zoned, because the area is subject to restrictive deeds and leases precluding adult establishments and potentially contains hazardous waste. However, at the hearing Mr. McLaughlin did testify that this area would support one site. *Id.* at 54 lines 17–18.

 Having reviewed Plaintiffs' objections, the Court notes that they can be summarized as follows: (1) restrictive deeds or covenants or master leases precluding adult establishments; (2) hazardous waste; and (3) property owned by the City. The Court finds the first and second objections irrelevant as previously noted. However, the objection concerning the Pier is well taken. When the regulator is also the land owner, such land cannot be considered within the relevant market if the government has a policy of not leasing to the adult establishments. Accordingly, the one adult use suggested in Third Area is excluded. Nonetheless, this leaves a total of nineteen possible sites.

The Court finds the existence of nineteen sites inadequate. Although there is no brightline rule for making this determination, the Court finds the relationship between the number of available sites and the population of the community important. *BBI Enterprises, Inc. v. City of Chicago,* 874 F.Supp. 890, 896 (N.D.Ill.1995) (stating "[w]hat is clearly a much more relevant basis for comparison is the relationship between (1) the number of a city's sites that are really available for adult uses and (2) that city's population—a relationship that speaks more directly in supply-and-demand terms"). As Mr. McLaughlin's original affidavit (Doc. No. 122) notes, there have been five cases in Florida approving various numbers of adult uses in various localities. *See International Eateries,* 941 F.2d at 1157 (dealing with 26 sites); *International Food & Beverage Sys. v. City of Ft. Lauderdale,* 794 F.2d 1520 (11th Cir.

1986) (dealing with 22 sites); *T–Marc, Inc. v. Pinellas County,* 804 F.Supp. 1500 (M.D.Fla. 1992) (dealing with 123 sites); *Southern Entertainment Co. of Fla., Inc. v. City of Boynton Beach,* 736 F.Supp. 1094 (S.D.Fla.1990) (dealing with 11 sites); *Function Junction, Inc. v. City Daytona Beach,* 705 F.Supp. 544 (M.D.Fla.1988) (dealing with 12 sites). Exhibit D to Mr. McLaughlin's affidavit compares the number of sites with the population for these five cases and the instant case. Boynton Beach has a population of 46,284, creating a ratio of one site per 4,208 people. Broward County has a population of 154,408, creating a ratio of one site per 5,939 persons. Daytona Beach has a population of 61,991, creating a ratio of one site per 5,166 persons. Fort Lauderdale has a population of 148,743, creating a ratio of one site per 6,761 persons. Pinellas County has a population of 268,394, creating a ratio of one site per 2,182 persons. St. Petersburg, however, has a population of 238,726, creating a ratio of one site per 12,-565 persons. In comparison, the City of St. Petersburg's ratio is inadequate.

■ Additionally, the Court is not swayed by Defendants' argument that the number of available sites must also include those available locations in the unincorporated area of Pinellas County. *Schad v. Borough of Mt. Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). In *Schad,* the local government argued that "if there were county-wide zoning, it would be quite legal to allow live entertainment in only selected areas of the county and to exclude it from primarily residential communities such as the Borough of Mount Ephraim." *Id.* at 76, 101 S.Ct. at 2187. The Supreme Court stated that while "[t]his *may very well be true,* ... the Borough cannot avail itself of that argument in this case. There is no county-wide zoning...." *Id.* (emphasis added). In the instant case, Defendants argue that although there is no county-wide zoning, there is a county-wide land use plan. The plan requires the City to seek permission of the County before it can change any land use category. Given the speculative language of

the Supreme Court in *Schad,* this Court will not expand the principle to the scenario in this case. Absent a county-wide zoning scheme, the City cannot avail itself of the sites in the unincorporated area of Pinellas County. *See Phillips,* 107 F.3d at 176 n. 4

In sum, this Court finds that the Ordinance is unconstitutional because it does not allow for adequate alternative avenues of communication. Summary judgement is entered in favor of the Plaintiffs as to Count II of Civith, et al.'s complaint and as to Count IV of 3405, Inc.'s amended complaint. Defendants' motion for summary judgment on this issue is denied.

### C. Is the Ordinance narrowly tailored?

■ Although neither Plaintiffs Civith, et al.'s complaint nor Plaintiff 3045, Inc.'s amended complaint contain a count specifically delineated as addressing the narrowly tailored requirement, both have moved for summary judgment on the issue.[18] *See* Doc. Nos. 113 & 121. The Plaintiffs note that in order for the Ordinance to be constitutional, the "incidental restrictions on ... First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 79–80, 96 S.Ct. 2440, 2457, 49 L.Ed.2d 310 (1976). The Ordinance must be "narrowly tailored to serve the government interest at issue." *International Eateries,* 941 F.2d at 1162.

Plaintiffs contend that the City cannot pass this hurdle because the City Council purposely tried to make the Ordinance as restrictive as possible. At the December 3, 1992 City Council Meeting, the City Attorney, Mr. Winn, presented a draft of the Ordinance with a 400 foot requirement. The City Council Staff and Mr. Winn then discussed the legality of a 1,000 foot requirement with the City Council. Mr. Winn specifically stated that a 1,000 foot requirement would not pass the constitutional test.

We think a thousand feet, which would only leave five possible sites in the City, which is a city of 27,000 acres, which is

---

**18.** One could argue that the issue of "narrowly tailored" was raised in the Counts on "Alterna-tive Avenues of Communication."

close to a quarter of a million people, I don't think that that (sic) would be appropriate or pass the constitutional test for providing alternative avenues of communication.

Doc. No. 29, Vol. No. 10, Exhibit 2 at 14. Mr. Winn then noted why his staff had suggested 400 feet.

As you know, the County has a 400–foot requirement. Their ordinance was recently challenged and recently upheld at 400 feet. Now at 400 feet their ordinance provides for more sites then our ordinance does.

*Id.* at 15. After hearing from the public, the City Council and the Mayor discussed the issue. The Mayor stated:

[S]o it became like everybody, I think, is sitting up here saying, "How far can we go and still defend this," is about what it amounted to. And this, this is where, Are you safe at 400 feet with a one-year grandfathering or can you go to a thousand feet. What can you do and still defend it and protect this City.

*Id.* at 31.

At the January 31, 1993 hearing, Mayor Fischer stated:

But what I'm concerned about is if we get a number so low that gets tied up in the courts, that instead of shutting down a lot of adult use centers or entertainment centers, we prolong the agony for two or three years and don't shut any down. So we've got to find that number that we can defend and still accomplish our goal.

*Id.*, Exhibit 4 at 13.

Having reviewed the transcripts of the City Council's hearings on November 10, 1992, December 3, 1992, January 7, 1993, January 21, 1993 and January 28, 1993 (Doc. No. 29, Exhibit 10), this Court finds that Defendants have not adopted an ordinance which is narrowly tailored. Rather, as noted by the previous conclusion that there are "inadequate alternative avenues of communication," the City has adopted an Ordinance which is "greater" than necessary to protect the governmental interest. Accordingly, Plaintiffs' motions on this issue are granted.

The Ordinance is unconstitutional because it is not "narrowly tailored."

## II. Does the enforcement of the Ordinance constitute a "Taking" in violation of the Constitution?

■ Count V of Plaintiffs Civith, et al.'s complaint alleges that the Plaintiffs operate adult entertainment establishments on their respective properties and that the enactment "of the Ordinance precludes use of their property for the chosen economically feasible use and deprives Plaintiffs of all reasonable economic benefit from the property." Doc. No. 1 at ¶ 95. Plaintiffs further aver that if "Plaintiffs are prevented from operating their businesses on the property, their leases will be void under the doctrine of commercial frustration and their business interest in the property will be taken." *Id.* at ¶ 96. Plaintiffs conclude that "the effect of the Ordinance at issue herein has the effect of taking property, ..., without compensation and without due process of law." *Id.* at 101.

Count VI of Plaintiff 3405, Inc.'s amended complaint alleges that the retroactive application of the Ordinance "has the effect of taking property—the business operated by Plaintiff—without compensation and without due process of law." Doc. No. 81 at ¶ 80.

Defendants argue summary judgment should be entered in their favor as to these Counts because the Ordinance is a proper zoning regulation, containing a proper amortization provision. Plaintiffs' response contends that while the Ordinance may not have taken all the beneficial use of the real property, it has taken all the use of the Plaintiffs' property right in their businesses.

The Court rejects Plaintiffs' argument concerning the Taking Clause. The Taking Clause of the Fifth Amendment prohibits the City from condemning "private property ... for public use without just compensation." The clause applies whenever government action renders property worthless. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1014–16, 112 S.Ct. 2886, 2892–94, 120 L.Ed.2d 798 (1992) (government action effectively condemns a landowner's property if it denies him "all economically beneficial or productive use" of his property). Plaintiffs

contend that even though beneficial use of the real property exists, a taking has nonetheless occurred because the landowner's chosen use of the property, i.e. the adult establishment, may no longer be operated on the property. Interestingly, the Court notes that Plaintiffs have offered no citation of authority in support of this position. Plaintiffs' argument impermissibly expands the scope of the Fifth Amendment such that most, if not all, zoning regulations result in a taking. Accordingly, the Court grants Defendants' motion on this issue and enters summary judgment in favor of the Defendants as to Count V of Plaintiffs' Civith, et al.'s complaint to the extent it alleges an unconstitutional taking and as to Count VI of Plaintiff 3405, Inc.'s amended complaint.

### III. Is the enforcement of the Ordinance barred by the Doctrine of Equitable Estoppel?

Count IV of Plaintiffs Civith, et al.'s complaint alleges that the Defendants knew or should have known of the Plaintiffs reliance upon the acts and omissions of the Defendants and that by enacting the Ordinance the Defendants deprived the Plaintiffs of their businesses in violation of the Doctrine of Equitable Estoppel. Doc. No. 1 at ¶¶ 83, 84, 85, 87, & 88. Defendants contend summary judgment should be entered in their favor as to these allegations because Plaintiffs have failed to exhaust their administrative remedies. *Specialty Malls of Tampa v. City of Tampa, Fla.*, 916 F.Supp. 1222, 1229 (M.D.Fla.1996). Plaintiffs' response does not contradict the fact that the Plaintiffs have not exhausted their remedies, but instead relies upon the Eleventh Circuit opinion in *Southern Cooperative Development Fund v. Driggers*, 696 F.2d 1347 (11th Cir. 1983). The Court finds Plaintiffs' response unpersuasive and enters summary judgment in favor of the Defendants as to Count IV of Plaintiffs Civith, et al.'s complaint to the extent it alleges equitable estoppel.

### IV. Is the Ordinance Overbroad or Vague?

Count VII of Plaintiffs Civith, et al.'s complaint alleges that the Ordinance's use of several terms. including but not limited to

"novelties," "devices," "adverse to the public interest," "social diseases, mingling," and "adult theater," render the Ordinance unconstitutionally vague. Count VIII of the complaint alleges that "the challenged legislation does not aim specifically at a legitimate state interest within the allowable area of governmental control but sweeps within its ambit other activities that constitute an exercise of protected expressive or associational rights." Doc. No. 1 at ¶ 128. Count VI of Plaintiff 3405, Inc.'s amended complaint alleges that the Ordinance contains "terms which are unconstitutionally overbroad, vague and indefinite." Doc. No. 81 at ¶ 74.

Having reviewed the Ordinance, particularly section 29–224(c), this Court finds that it is not unconstitutionally vague or overbroad. The Ordinance is aimed at the substantial governmental interest of combating the secondary effects of adult establishments. The Ordinance is specifically drawn to identify adult use establishments. Accordingly, the Court enters summary judgment in favor of the Defendants as to Counts VII and VIII of Plaintiffs Civith, et al.'s complaint and as to Count VI of Plaintiff 3045, Inc.'s amended complaint.

### V. Does the Ordinance violate the Equal Protection Clause of the Constitution?

Count VI of Plaintiffs Civith, et al.'s complaint alleges that the Ordinance "singles out adult entertainment establishments for special zoning treatment, based upon improper predicates . . . and violates the equal protections clause, . . ., and the right to privacy under . . . [the] Florida Constitution." Doc. No. 1 at ¶¶ 113 & 115. Count XI of Plaintiff 3405, Inc.'s amended complaint alleges that "it is undisputed that other land uses, including fast foods restaurants, liquor lounges and high schools have secondary effects akin to those which § 29–224, . . ., allegedly seeks to control. . . . [The Ordinance] denies Plaintiff and all other Adult Use owners and operators equal protection of the law. . . ." Doc. No. 81 at ¶¶ 106 & 108.

Having found that the Ordinance is properly aimed at the secondary effects of adult use establishments, this Court follows the lead of the Supreme Court in *Renton* and

finds that the Ordinance does not violate the Equal Protection Clause. *Renton,* 475 U.S. at 55 n. 4, 106 S.Ct. at 933 n. 4; *Specialty Malls,* 916 F.Supp. at 1232. Plaintiffs' argument is more properly raised under the First Amendment and the time, place and manner analysis previously discussed by the Court. Accordingly, the Court enters summary judgment in favor of the Defendants as to Count VI of Plaintiffs Civith, et al.'s complaint and as to Count XI of Plaintiff 3045, Inc.'s amended complaint.

### *VI. Is the Ordinance an Unconstitutional Prior Restraint and does it provide Procedural Safeguards?*

While the previous issues raised by Defendants have corresponded with particular Counts alleged by the Plaintiffs, these portions of Defendants' argument (Doc. No. 115) does not necessarily correspond with the allegations of the complaint. In the memorandum in support, Defendants argue that "a plain reading of the Ordinance clearly shows that ample procedural safeguards are available and that standards are established for administrative actions." Doc. No. 116 at 20. Defendants then note that the Ordinance provides that decisions of the Mayor must be made within twenty-one days of the application. Defendants further argue that Plaintiffs have made no "showing that they have been subjected to such unbridled administrative discretion or that any application they have made has failed to be given prompt review." *Id.* at 21.

The Court is unable to reach a decision on these arguments. First, the Court questions which Counts the argument addresses. Second, the Court finds Defendants have failed to meet their burden under Rule 56. Defendants have failed to show that as a matter of law summary judgment must be entered in their favor as to these arguments. Accordingly, as for these arguments, Defendants' motion is denied.

### *VII. Is the Ordinance a Bill of Attainder or Ex Post Facto law?*

[redacted] Count IV of Plaintiffs Civith, et al.'s complaint alleges that "the Ordinance is an *ex post facto* law in violation of Article I, Section 10 of the Constitution." Doc. No. 1 at ¶ 91. This Court finds that the Ordinance is not a bill of attainder or *ex post facto* law. The Ordinance is a zoning ordinance. It does not legislatively determine the guilt or innocence of a person and/or inflict punishment. *Specialty Malls,* 916 F.Supp. at 1230.

### *VIII. Do the Council Defendants enjoy Qualified Immunity?*

[redacted] Defendants Kone, Welch and Yingst ("Council Defendants") move for summary judgment as to Plaintiff 3405, Inc.'s claim. Doc. No. 98. Only Count XIII of Plaintiff 3405, Inc.'s amended complaint (Doc. No. 81) alleges a cause of action against the Council Defendants. Specifically, paragraph 118 of Count XIII alleges that the Council Defendants violated the Plaintiff's constitutional rights by:

(a) denying Plaintiff's variance application based on information and belief outside the record before the City Council;

(b) entering into *ex parte* communications with respect to the group of variance applications heard on the same day as Plaintiff's variance application;

(c) failing to base their decision with respect to Plaintiff's variance application on the only competent, substantial evidence before them; and

(d) failing to act fairly and impartially in considering Plaintiff's variance application.

Doc. No. 81 at ¶ 118. The Council Defendants contend their decision was quasi-judicial in nature and therefore affords them absolute or qualified immunity.

The Eleventh Circuit has rendered several opinions discussing the standard for qualified immunity. The initial burden rest with the defendants to show they were acting in the scope of their discretionary authority at the time of the alleged wrongdoing. If defendants meet that burden, then the plaintiff must "show that defendants violated clearly established law based upon objective standards." *Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir.1994); *see also Hartsfield v. Lemacks,* 50 F.3d 950, 953–954 (11th Cir. 1995); *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994).

**1310**

The Eleventh Circuit has provided district courts with further guidance concerning the plaintiff's burden in the posture of a motion for summary judgment. Evaluation of whether the plaintiff has met its burden divides into two issues. The first issue is whether the "applicable law was clearly established at the time of the governmental action." *Eubanks,* 40 F.3d at 1160. The second issue is "whether a genuine issue of fact must be resolved to determine if the government official's conduct violated clearly established law." *Id.*

While case law concerning these two issues is abundant, two recent Eleventh Circuit opinions deserve emphasis. In *Jenkins by Hall v. Talladega City Board of Educ.,* 95 F.3d 1036 (11th Cir.1996), the court examined the history of qualified immunity within the Eleventh Circuit. The court began by noting the purpose of the doctrine.

> The Supreme Court's qualified immunity doctrine attempts to strike a balance between two competing concerns: the necessity for constitutional damages actions against public officials because such actions "may offer the only realistic avenue for vindication of constitutional guarantees" and the need to limit the costs to individuals and society created by litigation against public officials....

*Id.* at 1039 (citation omitted). The court then observed that the Supreme Court, in an effort to strike the optimal balance, established an objective test for qualified immunity: a government official is immune from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citation omitted). The court next commented upon when a right is clearly established. Quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), the court stated:

> The contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 1040.

The Eleventh Circuit noted that confusion has arisen out of the polar extremes [19] articulated in *Anderson* and out of subsequent Eleventh Circuit cases discussing these polar extremes.

> For instance, the statement in *Lassiter* that "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances,*" has been read by some to indicate that qualified immunity is due every official unless this court has addressed essentially identical facts in a previous case.

*Jenkins by Hall,* 95 F.3d at 1040 (quoting *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1150 (11th Cir.1994) (en banc)) (emphasis in the original).

> Likewise, other cases have been misconstrued. We can all agree that "[i]f case law, in factual terms has not staked out a bright line, qualified immunity almost always protects the defendant," *Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified,* 14 F.3d 583 (11th Cir. 1994). This is another restatement of the *Anderson* requirement that the law must be apparent, but it does not answer the question "how bright?" or define the set of cases gestured towards by "almost."

*Id.* at 1040–41. The court concluded that these cases "have not eviscerated *Anderson*'s recognition that 'the very action in question [need not have] previously been held unlawful.'" *Id.* at 1041. Accordingly, in light of the opinion in *Jenkins by Hall,* this Court, in

---

19. The court stated:
Since *Anderson,* this court has devoted much effort to staking out an operation standard somewhere between the *Anderson* Court's polar extremes: "in light of preexisting law the

unlawfulness must be apparent," but "the very action in question [need not have] previously been held unlawful."
*Jenkins by Hall,* 95 F.3d at 1040.

determining whether the Council Defendants violated clearly established constitutional rights, must refrain from over-emphasizing either of the *Anderson* poles.[20]

The second issue in determining whether the plaintiff has met its burden is "whether a genuine issue of fact must be resolved to determine if the government official's conduct violated clearly established law." *Eubanks,* 40 F.3d at 1160. While the existence of a disputed material fact usually mandates the denial of a Fed. R. Civ. 56 motion, the court must exercise caution when such motion concerns qualified immunity. "In cases where defendants are entitled to qualified immunity, it is imperative that they receive the benefits of that defense prior to trial. . . . That imperative results from the nature of the entitlement to qualified immunity." *Cottrell v. Caldwell,* 85 F.3d 1480, 1487 (11th Cir.1996). Qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Id.* (citation omitted). It gives the government official the right to avoid standing trial.

In light of the significance of qualified immunity, the Eleventh Circuit recently stressed that while it lacks interlocutory jurisdiction "to review the denial of summary judgment where the only issues appealed are evidentiary sufficiency issues," the court has jurisdiction where "the denial is based even in part on a disputed issue of law." *Id.* at 1484–85. Accordingly, the Eleventh Circuit will exercise interlocutory jurisdiction "where the district court denied the summary judgment 'motion with the unadorned statement that [m]aterial issues of fact remain. . . .' " *Id.*

As a result of the *Cottrell* opinion, and in an effort to promote judicial efficiency, this Court must not merely conclude that the existence of disputed material facts precludes the granting of Council Defendants' motion. Rather, this Court must articulate, if any, those disputed evidentiary issues which mandate the denial of Council Defendants' motion and must separate out all legal issues.

In the instant case, the Plaintiff stipulates that the Council Defendants were acting in the scope of their discretionary authority when they denied the variance request. *See* Doc. No. 100 at 12. Accordingly, the burden shifts to the Plaintiff to show that the Council Defendants violated clearly established law.

In an effort to discharge its burden, Plaintiff 3405, Inc. contends that a genuine issue of material fact exists as to whether the Council Defendants' action violated clearly established law. Specifically, Plaintiff maintains that genuine issues of material fact exist as to whether the Council Defendants' decision was based on "competent, substantial evidence" as required by Florida law, *Board of County Comm'rs of Brevard County v. Snyder,* 627 So.2d 469, 476 (Fla.1993); *Town of Ponce Inlet v. Rancourt,* 627 So.2d 586, 588 (Fla.App.5th Dist.1993), and whether the Councilmen acted in a fair and impartial manner. Plaintiff argues that by relying on the opinion of laypersons, the Councilmen's decision was not based on substantial competent evidence, or alternatively, a genuine issue exists as to whether the Councilmen's decision was based on substantial competent evidence. *City of Apopka v. Orange County,* 299 So.2d 657 (Fla. 4th DCA 1974). *See* Doc. No. 100.

Plaintiff 3405, Inc. d/b/a The Wharehouse, owned and operated by Roberta Baugh, at 3627 Tyrone Boulevard in St. Petersburg, Florida, sought a zoning variance request pursuant to Section h(4) of St. Petersburg Code § 29–224. The Plaintiff's business was in violation of the Ordinance by being located within 700 feet of a residential neighborhood. Section h(4) allows the City to grant a zoning variance of an adult business provided three factors are met. The City must make the following findings: (1) that a sufficient physical barrier separates the use for which a variance is being sought; (2) that the strict application of the provisions of the Ordinance will work an undue hardship unique to the applicant for a particular location; and (3) that all other applicable provisions of the Ordinance and the codes and ordinances of the City will be observed.

---

**20.** "Over-emphasizing either of the *Anderson* poles flouts the Supreme Court's efforts to construct a meaningful doctrine of *qualified* immunity." *Jenkins by Hall,* 95 F.3d at 1040.

The City Council conducted a public hearing on the variance request on January 20, 1994. The city staff recommended that the variance be granted provided certain conditions were satisfied. The Council, however, in a three to three vote denied the request. Plaintiff's amended complaint alleges the Council Defendants violated the Plaintiff's constitutional rights by (1) denying Plaintiff's variance application based on information and belief outside the record; (2) entering into *ex parte* communications; (3) failing to base their decision on the only competent, substantial evidence before them; and (4) failing to act fairly and impartially in considering Plaintiff's variance application. The Plaintiff's memorandum in opposition to the Council Defendants' Motion, however, narrows the violations further. The Council Defendants violated the Plaintiff's rights in "(1) not basing their decision on competent, substantial evidence ... applied to the variance process ..., (2) relying on the opinion of laymen as 'competent, substantial evidence' ..., and (3) failing to act in a fair and impartial manner." Doc. No. 100 at 3.

The Court finds that these violations may be boiled down even further. Simply stated, there are two alleged constitutional violations before this Court: (1) the decision was not based on substantial competent evidence; and (2) the Council Defendants did not act in a fair and impartial manner.

As for the first violation, the Court questions parenthetically whether this is in fact a constitutional violation. Florida case law provides that a zoning variance board is not required to make findings of fact in reaching a decision. However, "in order to sustain the board's action, upon review by certiorari in the circuit court it must be shown that there was competent substantial evidence presented to the board to support its ruling." *Board of County Comm'rs of Brevard*, 627 So.2d at 476. It appears that the remedy to a decision not based on substantial competent evidence is to seek certiorari to the circuit court, not to file a 42 U.S.C. § 1983 action. Certiorari offers the Plaintiff a "realistic avenue for vindication of constitutional guarantees." *Jenkins by Hall*, 95 F.3d at 1039.

More importantly, the Court notes that the Plaintiff did in fact seek certiorari from the circuit court. On May 22, 1996 Circuit Court Judge Horace A. Andrews denied the Plaintiff's petition. The circuit court noted that the city staff's recommendation did not bind the council. *Hall v. Korth*, 244 So.2d 766 (Fla. 3d DCA 1971). The court then found that "there exists in the record substantial, competent evidence to show that the petitioner failed to meet all the criteria necessary to deserve a variance." Doc. No. 124.

> Specifically, the petitioner failed to show that there were sufficient barriers between the business and the neighboring residential areas ... Moreover, the petitioner (sic) fails to show that denial of the variance would result in undue hardship unique to it.... In passing, it appears to this court that any hardship may have been self-created....

*Id.*

Having reviewed the transcript of the January 20, 1994 hearing as well as the relevant material in the Court file, the Court finds that Council Defendants' decision was based on substantial competent evidence. In addition to the persuasive opinion of Judge Andrews, the Court highlights certain comments at the hearing. Specifically, at the end of the hearing, City Counsel Mr. Winn stated, "you know, you're basing your decision on the evidence that came out today, not necessarily all the opinions, if you feel on the *actual evidence that you've heard*, if you feel that a denial is warranted or approval, ... we would take that evidence if it's challenged...." Doc. No. 98, Exhibit A at 66, lines 2–9. The Council then voted on the decision. The Court stresses that although laypersons offered their opinion, the record before the Court reveals that the Council Defendants based their decision on the substantial competent evidence before them. Accordingly, the Court rejects Plaintiff's argument on this point.

The Court also rejects Plaintiff's "fair and impartial" argument. Plaintiff refers to certain quotes of the Council Defendants as proof of the Council Defendants' bias. *See* Doc. No. 100 at 3. This Court notes again Judge Andrews comments on this argument.

> The record does not demonstrate that the City Council did not give the petitioner a fair hearing. Although a few comments by

one Council member may indicate a predisposition against granting the variance, a reading of the entire transcript of the proceedings shows her realization that she must set aside her personal feelings and rule objectively. The comments, when placed in context of the rest of the proceedings, do not indicate the hearing was fundamentally unfair to the petitioner.

Doc. No. 124. In addition to Judge Andrews ruling, the Court highlights the following comments by the Council Defendants.

*Council Member Kone:* We employ a legal staff that are for the specific purpose of trying to keep us out of court. We can't just off arbitrarily emotionally and make the decisions as much as we would like to....

Doc. No. 98, Exhibit A at 55, lines 6–7.

*Council Member Yingst:* Two things. One is as was mentioned as though the city did not do the right think or has a liability even for not having addressed Mrs. Baugh when she bought this she needed a variance. And I think this—that might happen in rare circumstances but this is not one of those cases. This is when somebody buys a business, they have a responsibility of getting their own legal advice, advising them on those kinds of things....

*Id.* at 56, lines 8–16.

*Council Member Welch:* This—this really is—is a pretty hard one for me to really reach a decision on because we do have in place an ordinance that say 700 feet.... From the effects and the presentation that have been given here this afternoon and each individual case, and I looked at each individual case, and I looked at each individual case to see of the facts and what have you, this case is no different from the other cases that we have heard today....

*Id.* at 57, lines 17–20 and 58, lines 19–24.

In conclusion, having looked at the sufficiency of the evidence in light of the Plaintiff's burden, the Court finds that the Plaintiff has failed to meet its burden. The Council Defendants have violated neither "apparent preexisting law" nor have their actions been "unlawful." *Jenkins by Hall,* 95 F.3d at 1040. Accordingly, the Court grants the Council Defendants' motion. The Council Defendants are afforded qualified

immunity and therefore the case (case no. 94–160) is dismissed against them. The case remains as against the Defendant City of St. Petersburg.

**Conclusion**

Plaintiffs Centerfold Club, Inc. and Joseph Civith d/b/a "Foxy Lady" lack standing. Case number 94–93, filed by Plaintiff Centerfold, is dismissed and closed. Case number 94–152, to the extent filed by Plaintiff Joseph Civith, is dismissed. The case as filed by Plaintiffs Dou–Han and Sancharger against Defendants City of St. Petersburg, Police Chief Stephens and City Attorney Davis remains.

As for the remaining two cases, i.e. 94–152 and 94–160, Defendants' and Plaintiffs' motions (Doc. Nos. 115 & 121) concerning the constitutionality of the Ordinance are granted in part and denied in part. The Ordinance is unconstitutional because is does not allow for adequate alternative avenues of communication and because it is not narrowly tailored. The Ordinance, however, does serve a substantial governmental interest and is not improperly motivated. Additionally the Ordinance does not violate the Taking Clause of the Fifth Amendment, the Equal Protection Clause and the Ordinance is not unconstitutionally overbroad or vague. Additionally, the Ordinance is not a bill of attainder or *ex post facto* law.

As for Plaintiff 3405, Inc.'s action, the Council Defendants' motion concerning qualified immunity (Doc. No. 98) is granted. The Council Defendants do enjoy qualified immunity. Accordingly, case number 94–160 is dismissed as against Defendants Connie Kone, David T. Welch and Paul V. Yingst.

Accordingly, it is **ADJUDGED AND ORDERED** that:

(a) Defendants Connie Kone, David T. Welch and Paul V. Yingst's (in their individual capacities) (collectively referred to as the "Council Defendants") Motion for Summary Judgment (Doc. No. 98, filed November 17, 1995) is **GRANTED.** The Council Defendants do enjoy qualified immunity. The action as against them is dismissed. The action remains as against the City of St. Petersburg.

(b) Council Defendants' Motion for Permission to File Reply Memorandum (Doc.

**1314**

No. 101, filed December 12, 1995) is **GRANTED.**

(c) Plaintiffs' Motion for Summary Judgment (Doc. No. 113, filed May 21, 1996) is **GRANTED IN PART.** The Ordinance serves a substantial governmental interest (i.e. has a proper predicate), but is not narrowly tailored, thereby rendering it unconstitutional.

(d) Defendant City of St. Petersburg and Defendants Fischer, Stephens and Davis' (in their official capacities) Motion for Summary Judgment (Doc. No. 115, filed May 22, 1996) is **GRANTED IN PART AND DENIED IN PART:**

(i) Concerning the issue of the standing of Plaintiffs Centerfold Club, Inc. and Joseph Civith d/b/a "Foxy Lady," the motion is granted. These Plaintiffs lack standing. Case number 94–93, filed by Plaintiff Centerfold, is dismissed and **CLOSED.** Judgment is entered in favor of Defendants. Case number 94–152, to the extent filed by Plaintiff Joseph Civith, is dismissed. The case as filed by Plaintiffs Dou–Han and Sancharger against Defendants City of St. Petersburg, Police Chief Stephens and City Attorney Davis remains.

(ii) Concerning the issues of improper motive and predicate (i.e. substantial governmental interest), the motion is granted. The Ordinance serves a substantial governmental interest and is properly motivated.

(iii) Concerning the issue of alternative avenues of communication, the motion is denied. The Ordinance does not provide for alternative avenues of communication and is therefore unconstitutional.

(iv) Concerning the issue of "taking," the Ordinance does not result in taking of the Plaintiffs' property without just compensation. The Ordinance is a proper zoning ordinance and therefore is not unconstitutional under this argument.

(v) Concerning the issue of equitable estoppel, the motion is granted in favor of the Defendants. The Plaintiffs have failed to exhaust their administrative remedies.

(vi) The Ordinance is not overbroad or vague. Summary judgment is entered in favor of the Defendants on this argument.

(vii) The Ordinance does not violate the Equal Protection Clause. Summary judg-ment is entered in favor of the Defendants on this argument.

(viii) Concerning the issue of prior restraint and procedural safeguards, Defendants motion is denied.

(ix) The Ordinance is not a bill of attainder or *ex post facto* law. Summary judgment is entered in favor of the Defendants as to this argument.

(e) Plaintiffs Centerfold Club, Inc., Joseph Civith and 3405, Inc.'s Motion for Summary Judgment (Doc. No. 121, filed May 22, 1996) is **GRANTED.** The Ordinance does not allow for adequate alternative avenues of communication and is not narrowly tailored. Accordingly, the Ordinance is unconstitutional.